THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. REGINALD CARTER, Defendant-Appellant.

First District (4th Division) No. 84—579

Opinion filed July 25, 1985.—Rehearing denied August 28, 1985.

James J. Doherty, Public Defender, of Chicago (Eve Moran and Marilyn Martin, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Donna B. More, and Brian S. Crowley, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Following a bench trial, defendant, Reginald Carter, was found guilty of attempted murder but mentally ill. (Ill. Rev. Stat. 1981, ch. 38, par. 8—4(a); Ill. Rev. Stat. 1981, ch. 38, par. 115—3(c)). Defendant was sentenced to eight years in the Illinois Department of Corrections.

On appeal, defendant contends that the conviction and sentence must be set aside because: (1) the State failed to prove defendant had or could formulate the specific intent necessary to establish the crime of attempted murder; (2) the State failed to rebut the issue of self defense which was raised at trial; (3) the judgment of guilty but mentally ill and the eight-year sentence rest on the trial court's misapprehension of the law; and, (4) the guilty-but-mentally-ill statute (Ill. Rev. Stat. 1983, ch. 38, par. 115—3(c)) is facially unconstitutional.

We affirm.

BACKGROUND

Testimony adduced at trial alluded to the facts that on November 17, 1981, defendant's brother, Dennis Carter, received a phone call from their sister asking him to come to their mother's home. It appeared that defendant had threatened their mother with a knife. Dennis, accompanied by his friend, Clifton Lynch, immediately drove to his mother's home. Finding that his mother was not at home, Dennis along with Clifton drove around a few blocks searching for her. While searching for his mother, Dennis saw defendant in the parking lot of a nearby liquor store. It was apparent that defendant had been drinking.

Dennis pulled over to where defendant was standing and asked defendant why he had threatened their mother with a knife. Defendant responded that it was "none of [Dennis'] fucking business," and proceeded simultaneously to kick the car door and through the open car window stab Dennis in the shoulder with a switch blade knife. Dennis leaned away from defendant and closed the car window. As Dennis attempted to drive away, defendant jumped onto the hood of his car. Dennis stopped the car, and the motor then stalled. At that point, defendant leaped from the hood of the car, seized a metal milk crate, and shattered the windshield of Dennis' car. Defendant then began to flee from the scene.

At that point, Dennis got out of the car, picked up the milk crate, and followed defendant, who was still carrying the knife. Defendant ran around the side of a parked van. Dennis then dropped the milk crate and attempted to grab defendant. Clifton then came around the other side of the van and also attempted to grab defendant. During the struggle, defendant again stabbed Dennis. As a result, Dennis suffered various lacerations, including a punctured lung. After the second stabbing incident, defendant dropped the knife and fled.

On the following day, defendant was arrested. Subsequently, defendant was charged with attempted murder, aggravated battery and armed violence. Defense counsel raised the insanity defense and also asserted that the evidence would show that defendant was provoked to stab his brother.

At trial, Dr. Albert Stipes, an expert in psychiatry, testified for the defense. Stipes stated that he had examined defendant on a number of occasions. Initially, he examined defendant only to determine his fitness to stand trial. On four subsequent occasions he examined defendant to determine defendant's sanity at the time of the stabbings. Based on these examinations and in conjunction with defendant's psychiatric history, Stipes diagnosed defendant as suffering from

psychogenia, a schizophrenic disorder characterized by severe depression or states of excitability. It was Stipes' opinion that defendant was legally insane at the time defendant stabbed his brother, Dennis.

In rebuttal, the State offered the testimony of Dr. Gilbert Bogen, also an expert in psychiatry. Bogen reviewed the defendant's extensive psychiatric history, the police report of the stabbings, and by personal psychiatric interview and evaluation determined that defendant suffered from a schizo-affective or "mood" disorder. Bogen concluded that defendant, at the time of the stabbing incidents, could appreciate the criminality of his conduct and that defendant could conform his conduct to the requirements of the law. It was his opinion that defendant was legally sane at the time he stabbed his brother.

The record indicates that both Drs. Stipes and Bogen were aware that defendant had a history of violence after consuming alcohol and that they both knew that defendant had been drinking on the day of the stabbings. Both doctors also acknowledged that medication had been prescribed to regulate defendant's disorder, but that they were unaware as to whether or not defendant took any medication that day.

At the conclusion of the bench trial, the trial court found defendant guilty but mentally ill and convicted him of attempted murder, aggravated battery and armed violence. Judgment was entered only on the conviction for attempted murder, for which defendant was sentenced to an eight-year term. At the sentencing hearing, the trial judge noted that defendant was then in present need of mental care.

Defendant appeals from the judgment and the sentence.

I

■■ Defendant first contends that the State failed to prove that he had or could formulate the specific intent necessary to establish the crime of attempted murder. The State, on the other hand, argues that the evidence adduced at trial proves that defendant did indeed possess the requisite specific intent necessary to support his conviction of attempted murder.

"A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense." (Ill. Rev. Stat. 1981, ch. 38, par. 8—4(a).) The intent to kill or do great bodily harm to another satisfies the mental state requirement for the offense of murder. (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(1).) The Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 4—4) defines "intent" as follows:

"A person intends, or acts intentionally or with intent, to ac-

complish a result or engage in conduct described by the statute defining the offense, when his conscious objective or purpose is to accomplish that result or engage in that conduct."

Proving whether a party has acted with "intent to take a life" has been held to be a question for the trier of fact which may be inferred from the character of the assault, the use of deadly weapons or other surrounding circumstances. *People v. Bell* (1983), 113 Ill. App. 3d 588, 447 N.E.2d 909.

■ In the instant case, it is uncontroverted that defendant repeatedly attacked his brother with a deadly weapon inflicting a life threatening injury. The first stabbing took place while defendant's brother Dennis was still in his car. When Dennis attempted to drive away, defendant caused him to stop by jumping onto the hood of his car. Defendant then proceeded to smash the windshield with a metal milk crate while all the time Dennis remained inside. When Dennis finally attempted to restrain defendant, he was again assaulted with the knife. As a result, Dennis suffered a punctured lung and other lacerations about his head and hand.

At trial, Dr. Bogen testified that, in his expert opinion, defendant was legally sane at the time of the stabbings. The record further indicates that defendant fled from the scene and that he was found hiding from police in a closet in his home at the time of his arrest. In addition, defendant's expert Dr. Stipes, testified that at the time of the stabbings defendant evidenced controlled behavior, one factor that demonstrates sanity.

After viewing all of the evidence presented in this case, the trial court determined that defendant had the specific intent necessary to find him guilty of the crime of attempted murder. It is axiomatic that the trier of fact determines the weight and credibility of witnesses and that its factual determinations are to be given great weight; therefore we will not disturb the trial judge's findings unless the judgment is not sustained by the evidence or the evidence is so improbable, unsatisfactory or inconclusive as to raise a reasonable doubt of guilt. (*People ex rel. Illinois State Dental Society v. Norris* (1979), 79 Ill. App. 3d 890, 338 N.E.2d 1163.) Judging from the character of and the circumstances surrounding defendant's persistent and repeated stabbings of his brother Dennis, and in conjunction with the testimony of the expert witnesses, we are persuaded that the evidence adduced at trial was sufficient for a reasonable trier of fact to determine that defendant acted with intent to kill his brother. Accordingly, we find this evidence to be sufficient to sustain, beyond a reasonable doubt, defendant's conviction for attempted murder.

## II

■ Defendant next contends that he stabbed his brother in self-defense and that the State failed to rebut this issue at trial. The State in turn contends that this issue was not raised at trial or in a post-trial motion, and that defendant has waived this issue on appeal. Although we believe that defendant did indeed waive this issue by failing to raise it in a post-trial motion, we nevertheless will discuss it here.

Self-defense is an affirmative defense. (Ill. Rev. Stat. 1981, ch. 38, par. 7—14.) While it is true that this issue may be raised by either the State or the defendant (Ill. Rev. Stat. 1981, ch. 38, par. 3—2), in order for this to occur, at least "some evidence" of self-defense must be introduced at trial. (*People v. Warren* (1965), 33 Ill. 2d 168, 210 N.E.2d 507.) Once the affirmative defense of self-defense is raised, the State must prove beyond a reasonable doubt that the defendant did not act in self-defense, in addition to proving, beyond a reasonable doubt, the elements of the offense charged against defendant. *People v. Rice* (1982), 108 Ill. App. 3d 344, 438 N.E.2d 1333.

The elements of the defense of self-defense are:

"(1) that force is threatened against a person; (2) that the person threatened is not the aggressor; (3) that the danger of harm is imminent; (4) that the force threatened is unlawful; (5) that the person threatened must actually believe: (a) that a danger exists, (b) that the use of force is necessary to avert the danger, (c) that the kind and amount of force which he uses is necessary; and (6) that the above beliefs are reasonable. There is a further principle involved, when, as in the instant case, the defendant uses deadly force. This principle limits the use of deadly force to those situations in which (a) the threatened force will cause death or great bodily harm or (b) the force threatened is a forcible felony." (*People v. Williams* (1965), 56 Ill. App. 2d 159, 165-66, 205 N.E.2d 749, 752.)

When the trier of fact determines that any of the evidence at trial negates, beyond a reasonable doubt, the existence of one of these elements, the State has carried its burden so that the defense of self-defense must be rejected. Whether the negation has been established is a factual question to be resolved by the trier of fact, and this court will not upset that finding unless the evidence is so improbable or unsatisfactory as to raise a reasonable doubt of defendant's guilt. *People v. Zolidis* (1983), 115 Ill. App. 3d 669, 450 N.E.2d 1290.

In the case before us, defendant asserts that the issue of self-defense was raised by virtue of the very fact that defendant was

charged with attempted murder. In his reply brief, defendant states that "the issue of self-defense does not rise out of an independent claim; instead, it serves to negative an element essential to the State's charge of attempt murder ***." Section 3—2(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 3—2(a)) states that " '[a]ffirmative defense' means that unless the State's evidence raises the issue involving the alleged defense, the defendant, to raise the issue, must present some evidence thereon." It is abundantly clear to us from the plain language of the affirmative defense statute that self-defense is not an element of the crime of attempted murder. Rather, self-defense is an independent claim which must be raised at trial by the introduction of at least "some evidence" of the defense. (See *People v. Warren* (1965), 33 Ill. 2d 168, 210 N.E.2d 507.) Thus, we are not persuaded by defendant's argument which we interpret merely as an attempt to bootstrap the issue of self-defense to the State's charge of attempted murder against defendant.

It is apparent to us that the self-defense issue in this case can be predicated only upon the testimony of the victim, Dennis Carter. Dennis' testimony is the only account of the stabbings in the record. Dennis testified that the defendant ws the aggressor at the time of the incident. Defendant stabbed Dennis as he sat in his car and then defendant proceeded to smash the windshield with a metal milk crate. When Dennis and his companion, Clifton Lynch, attempted to restrain defendant, he began slashing and stabbing at them with the knife, puncturing one of Dennis' lungs. Based on this testimony, we do not think it improbable that the trier of fact could have determined that defendant was not acting in self-defense. Likewise, the trier of fact could have determined that defendant's flight from the scene and his hiding from the police evidenced his consciousness of guilt and could have concluded that the issue of self-defense was never adequately raised. *People v. Seiber* (1979), 76 Ill. App. 3d 9, 394 N.E.2d 1044.

We also believe that the record in this case indicates that the force used by defendant against his brother was intended or likely to cause death or great bodily harm. We note that Dennis was subsequently hospitalized for what was stipulated to be a life-threatening injury. At the same time, we are not persuaded that the conduct exhibited by Dennis and Clifton in their efforts to restrain defendant threatened defendant with death or great bodily harm. Both Dennis and Clifton were unarmed, and we do not consider their attempts to grab defendant to be in the nature of an act equated to the commission of a forcible felony. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—1—9.) Even if we were to find from the evidence that Dennis clearly was

the aggressor and that the issue of self-defense was indeed raised at trial, there is nothing in the record to persuade us that defendant was reasonably justified in stabbing Dennis. (Ill. Rev. Stat. 1981, ch. 38, par. 7—1.) Therefore, we conclude that defendant did not stab Dennis in self-defense, and the trial court's determination is not contrary to the evidence so as to raise a reasonable doubt as to defendant's guilt.

## III

■ Defendant next asserts that he was denied a fair trial because the trial court's finding of guilty but mentally ill was based on a misapprehension of the law. Defendant argues that the trial judge's concern for defendant's present mental problems distracted the trial judge from consideration of defendant's affirmative defense of insanity. We disagree.

Section 115—3(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 115—3(c)) states as follows:

"When the defendant has asserted a defense of insanity, the court may find the defendant guilty but mentally ill if, after hearing all of the evidence, the court finds beyond a reasonable doubt that the defendant:

(1) is guilty of the offense charged; and

(2) was mentally ill at the time of the commission of the offense; and

(3) was not legally insane at the time of the commission of the offense."

Section 6—2(d) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 6—2(d)) defines the term "mentally ill" as follows:

" '[M]ental illness' or 'mentally ill' means a substantial disorder of thought, mood, or behavior which afflicted a person at the time of the commission of the offense and which impaired that person's judgment, but not to the extent that he is unable to appreciate the wrongfulness of his behavior or is unable to conform his conduct to the requirements of law."

In this case, as discussed above, the trial court's finding that defendant was guilty but mentally ill was based upon the evidence adduced at trial and upon the trial court's analysis of the credibility of witnesses. In a bench trial, the trial court is presumed to have considered only competent evidence. In order to rebut this presumption, there must first be an affirmative showing on the record that the court actually used improper evidence. *People v. Perez* (1983), 115 Ill. App. 3d 446, 450 N.E.2d 879.

In this case, Dr. Bogen expressly stated at trial that, although in

his opinion defendant was sane at the time of the stabbings, he did not mean to imply that defendant was mentally stable. While it was Dr. Stipes' opinion that defendant was legally insane at the time of the incident, he too noted that defendant evidenced the kind of controlled behavior which is one factor that determines sanity. The record also indicates that defendant has a psychiatric history of schizophrenia and alcohol abuse. We stated above that we believe that the evidence adduced at trial was sufficient to sustain the trial court's determination that defendant was guilty of attempted murder beyond a reasonable doubt. We also believe that the totality of all the evidence as set forth in the record adequately supports our conclusion that the trial court could have inferred that defendant suffered from some degree of mental illness at the time of the commission of the offense, but that he was legally sane.

Consequently, we are not persuaded by defendant's contention that he was denied a fair trial and that the court did not properly consider his defense of insanity. Finally, even if defendant had made an affirmative showing that the trial court did indeed consider defendant's present mental state in reaching its finding, as we noted above, we find that there is sufficient evidence in the record to support the trial court's determination that defendant was guilty beyond a reasonable doubt of attempted murder but mentally ill at the time of the offense.

## IV

■ Defendant further contends that the trial court misunderstood the consequences of the guilty-but-mentally-ill verdict such that the sentence imposed by the trial court was improper. We have already determined that the evidence adduced at trial was sufficient to sustain the trial court's finding that defendant was guilty of attempted murder and that he was mentally ill at the time of the offense. Thus the issue now is whether the instant cause should be remanded for resentencing. We think not.

Defendant's argument rests on his belief that prejudice existed in the trial court's mind both as to defendant's present mental condition and the certainty of treatment the trial court apparently perceived would follow the guilty-but-mentally-ill verdict as a matter of course. Defendant cites the record, noting the trial judge's statements at sentencing that:

> "The Court is going to sentence you to eight years in the Illinois Department of Corrections realizing that you are in need now of detention for your mental condition, being mentally ill.

That would be attended to first.

\* \* \*

In other words, they're going to take care of your health problems first."

First of all, the verdict of guilty but mentally ill allows the possibility for the mentally ill convicted criminal to be placed by the Department of Corrections with the Department of Mental Health and Developmental Disabilities for hospitalization. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—6.) This need for hospitalization is based on defendant's mental condition during his prison term. Because hospitalization is based on defendant's present need for mental care rather than based on his past bad acts, we do not perceive the trial court's consideration of defendant's mental state at the time of sentencing to be in error. *People v. Dalby* (1983), 115 Ill. App. 3d 35, 450 N.E.2d 389.

Secondly, defendant was convicted of attempted murder under section 8—4 of the Criminal Code of 1961. (Ill. Rev. Stat. 1981, ch. 38, par. 8—4.) The sentence for attempt to commit murder is the sentence for a Class X felony (Ill. Rev. Stat. 1981, ch. 38, par. 8—4(c)(1)), punishable by not less than six years but not more than a 30-year term. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1.) Here, defendant was sentenced to an eight-year term. This is clearly within the minimum and maximum sentences allowable for the crime of attempted murder under the criminal code.

Furthermore, we do not interpret the trial court's statement that "they're going to take care of your health problems first" to indicate that the trial court did not first concern itself with the determination of defendant's guilt or innocence. Although there is no guarantee that defendant will be treated as the trial court suggested, the fact that defendant was found guilty but mentally ill does guarantee defendant the benefit of being characterized as in need of treatment as the legislature intended. (*People v. Smith* (1984), 124 Ill. App. 3d 805, 465 N.E.2d 101.) We find this to be in keeping with the well-established view that it is the Department of Corrections and not the judiciary which has the power to implement mental treatment of incarcerated defendants. *People v. Kaeding* (1983), 98 Ill. 2d 237, 456 N.E.2d 11.

Accordingly, we are not persuaded by defendant's argument that he was prejudiced by the trial court's apparent belief that he would necessarily receive mental treatment in prison. There is no affirmative indication in the record that the trial court considered any incompetent evidence in sentencing defendant or that the legislative purpose behind the guilty-but-mentally-ill verdict has been violated. As a result, we are of the opinion that the eight-year sentence imposed on

defendant by the trial court was based on competent evidence and is wholly proper given the facts and circumstances of the case.

## V

■ The final issue raised by defendant is whether the guilty-but-mentally-ill statute violates the due process and equal protection clauses of the United States and Illinois constitutions. (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, sec. 2.) This same issue was recently addressed by this court in *People v. Smith* (1984), 124 Ill. App. 3d 805, 465 N.E.2d 101, where we upheld the constitutionality of the guilty-but-mentally-ill statute. We find no basis and we are not compelled to alter our position in *Smith,* despite defendant's arguments and request that we further review that decision at this time.

## A

Defendant asserts that the guilty-but-mentally-ill statute (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—6) violates due process because it penalizes those defendants who unsuccessfully raise the insanity defense by imposing upon them the gratuitous label of adjudicated mental illness, with all of its concomitant collateral effects, without any compensatory mitigating impact, and by maintaining the potential for chilling the assertion of the insanity defense by way of legal disabilities, collateral consequences, and the encouragement of a compromised verdict without any assurance of treatment.

This is precisely the same argument raised by the defendant in *People v. Smith* (1984), 124 Ill. App. 3d 805, 811, 465 N.E.2d 101, 105-06, where we stated:

"When determining whether a statute violates due process the court must determine whether the statute is reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety and general welfare. The due process clause requires only that the statute be reasonably designed to accomplish its purposes, not that it be the best means of accomplishing them. [Citation.]

In the instant case, the legislature intended to provide a statute that reduced the number of persons who were erroneously found not guilty by reason of insanity and to characterize such defendants as in need of treatment. The guilty but mentally ill statute is clearly rationally designed to accomplish that goal. The statute enables the court to still find defendants guilty that are not so mentally ill as to be legally insane, but it also provides procedures for providing treatment to such defendants.

\*\*\* [T]he attendant stigmas asserted by the defendant do not create a significant penalty and are not a sufficient basis on which to find the statute unconstitutional. Moreover, the fact that the treatment is not assured also does not render the guilty but mentally ill statute constitutionally fatal as the defendant argues. Rather, in *People v. Kaeding* (1983), 98 Ill. 2d 237, 244-45, 456 N.E.2d 11, 16, the Illinois Supreme Court noted that the legislature did not intend to require the court or the Department of Corrections to provide treatment to all guilty but mentally ill defendants.

Additionally, the guilty but mentally ill statute does not chill the assertion of the insanity defense. Under the guilty but mentally ill statute, in order to convict a defendant who raises the insanity defense, the defendant must still be found guilty beyond a reasonable doubt of the crime charged and be found legally sane. [Citation.] The statutes does not change any rights, obligations or disabilities [citation], so that neither the possibility of adverse collateral consequences nor a purported compromised verdict significantly chills the assertion of the insanity defense so as to render the statute unconstitutional."

## B

■ Defendant's final contention is that the guilty-but-mentally-ill statute violates equal protection considerations because it establishes two arbitrary classifications bearing no reasonable relationship to any legitimate State interest. The first classification is between guilty-but-mentally-ill defendants placed on probation, periodic imprisonment or conditional discharge who are required to submit to treatment (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—6(e)(1)), and the guilty-but-mentally-ill defendants placed in prison who receive no assurance of treatment at all. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—6(b)). The second classification is based solely on whether or not an inmate raised the insanity defense at his trial.

This exact issue was also addressed by this court in the *Smith* case. With regard to the first classification, we found that there was no equal protection violation, citing the Illinois Supreme Court's decision in *People v. Kaeding* (1983), 98 Ill. 2d 237, 456 N.E.2d 11. Like the *Kaeding* court, we are convinced that equal protection guarantees do not preclude dividing the responsibility of determining treatment to be given to imprisoned, as opposed to nonimprisoned, offenders. We hold that discrepant treatment rights based on the site of a defendant's incarceration better serve the legislative purpose under-

lying the Unified Code of Corrections to recognize the differences in rehabilitation possibilities among individual offenders and prescribe sanctions proportionate to the seriousness of the crimes they have committed. (Ill. Rev. Stat. 1981, ch. 38, par. 1001—1—2(a).) Clearly, the guilty-but-mentally-ill statute is designed with that purpose in mind such that we consider it to be reasonably related to a legitimate State interest.

With regard to the second classification, defendant merely states that only those inmates who unsuccessfully raised the insanity defense are subject to the stigma and collateral and socioeconomic consequences of an additional adjudication of mental illness. It is defendant's interpretation that since these defendants receive no greater assurance of treatment than "guilty" inmates who are also mentally ill, the guilty-but-mentally-ill statute must fail on equal protection grounds.

In *People v. Smith* (1984), 124 Ill. App. 3d 805, 812, 465 N.E.2d 101, 106, we addressed this same issue stating:

"A statute carries a presumption of rationality when undergoing the traditional equal protection examination, and it is the defendant's burden to demonstrate the impermissible nature of the classification created. [Citation.] In the instant case, the defendant has failed to meet his burden. The defendant relies solely on the concept of stigma and adverse collateral consequences as grounds for striking down the statute as unconstitutional on its face."

We do not see the absence of a greater assurance of treatment for guilty-but-mentally-ill offenders as rendering the statute unconstitutional. As we discussed above, the discretionary treatment authorized by the guilty-but-mentally-ill statute is a rational means of furthering the legislative purpose of making the punishment fit the offense and allowing for the recognition of differences in rehabilitation possibilities among individual offenders. Ill. Rev. Stat. 1981, ch. 38, par. 1001—1—2(a); *People v. Kaeding* (1983), 98 Ill. 2d 237, 456 N.E.2d 11.

Accordingly, the guilty-but-mentally-ill statute is rationally based on a legitimate State interest, does not create an arbitrary classification, and is therefore constitutional.

For the reasons stated above, we affirm the decision of the trial court.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.