THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MELVIN REED, Defendant-Appellant.

First District (1st Division) No. 1—87—1587

Opinion filed February 4, 1991.

Randolph N. Stone, Public Defender, of Chicago (Stephen L. Richards, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb and David R. Butzen, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Following a bench trial, Melvin Reed was found guilty pursuant to section 8—4(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 8—4(a)) for the attempted murder of Earl Robertson, rather than guilty but mentally ill or not guilty by reason of insanity. Thereafter, the trial court sentenced Reed to 40 years in the Illinois Department of Corrections.

At trial, Robertson testified that he owned a service station at the southeast corner of 111th Street and Normal Avenue; that he had been friendly with Reed since the summer of 1984; that Reed owned the building across the street from his service station, operated a snack shop, and managed three apartments therein; that Reed operated a decorating business; that Claude Haynes was Reed's tenant; that three months after Haynes moved into the apartment building, Haynes complained that Reed raised his rent; that after Haynes complained that his rent was too high, Reed complained that Haynes was not paying his rent; that in early April 1985, he saw a man break a car's windshield in front of Reed's building and that such man later told Robertson that someone had paid him to do it; and that about a week after the windshield had been broken, he noticed that Reed's building's front window was broken.

Robertson also testified that about two weeks before he was shot, Reed said that he wished he could discover who broke his building's window, that if he found out who broke his window he would "kill him," and that he thought Haynes had something to do with it. Further, Robertson testified that while he was walking towards his service station on May 14, 1985, he exchanged greetings with Reed; that Robertson walked towards his car, which was parked next to his nephew Shawn Sproles' car; that Sproles was lying on the ground working on Sproles' car; that he noticed Sproles and Reed wrestling; that Sproles ran to the front of the car; and that Reed shot his gun. Additionally, Robertson testified that when he told Reed to put the gun down before he got into trouble or hurt someone, Reed turned and said "I owe you some too." Then, Reed shot Robertson three times. As a result of the gunshot wounds, Robertson is a paraplegic.

Next, Sproles testified. He testified that in the summer of 1984, Haynes became Reed's tenant; that on Christmas Day in 1984, Haynes' car window was broken; and that two weeks before Reed shot Robertson, Reed's apartment window had been broken. Sproles stated that Reed was standing in front of the snack shop when Sproles arrived at Robertson's service station; that when Sproles was kneeling down to take the wheel off his car, Reed walked across the street, approached Sproles and said, "I heard you shot my window out"; that Sproles said "get out of my face" and that Reed tried to kick Sproles; that Sproles caught Reed's foot and threw him to the ground; and that when Reed pulled a gun out of his pocket, Sproles fled down an alley. Sproles stated that "it seemed like he was in complete control of what he was doing to me because he was just a person with a temper."

Two other witnesses, Monroe Thompson and Jerry Webb, testified similarly to the facts stated above. In addition, Jerry Webb testified that on the day of the shooting, it looked like Reed was decorating one of his apartments because Reed was bringing supplies into his building; that about two weeks before the shooting, he saw Reed fix a window; and that Reed appeared calm before and after the shooting.

Officer James Griffin of the Chicago police department testified that he was in the vicinity of 111th Street and Normal Avenue when he heard gunshots and stopped his car; that he saw Reed crossing 111th Street carrying a bluesteel revolver; that he ordered Reed to drop his gun; that Reed asked whether Officer Griffin was a police officer; that Officer Griffin answered affirmatively and again ordered Reed to drop his gun and place his hands on the van; that Reed obeyed; that Reed was placed under arrest; that when Reed was

taken to the police station, Reed asked him to take care of his van because "people in the neighborhood" might break his windows or vandalize it; that at the police station, Reed said he believed Sproles had broken his snack shop window and broken his car window; and that when Officer Griffin told Reed that his van was safe, Reed said thank you.

Detective JoAnne Ryan of the Chicago police department testified that when she spoke with Reed at the police station on May 14, 1985, Reed was coherent, courteous, answered questions in a normal fashion and appeared calm; that Reed said the shooting was not an accident, that he said he was having problems with tenants, and that he asked for a lawyer.

During the defense's case in chief, Dr. Robert Reifman testified that Reed was insane when he shot Robertson because he suffered from "severe" or "organic" dementia. Dr. Reifman testified that his diagnosis was based upon his April 23, 1986, examination of Reed and the following reports: a January 13, 1986, examination conducted by Dr. Gerson Kaplan; a May 28, 1985, psychiatric examination; a psychiatric examination performed 13 days after the shooting; a 1984 social security evaluation performed by a psychologist and a psychiatrist; a social security review board evaluation; a social history which was prepared by Reed's mother and son; and the police reports regarding the shooting.

Based upon the social history, Dr. Reifman's opinion was that Reed suffered from memory loss, that he had periods of confusion, that he would hear voices, that he would see things, and that Reed apparently felt that his neighbors were harassing him, *i.e.*, breaking his windows. However, Dr. Reifman stated that he would have to re-evaluate his opinion if the information received from the family was contrived.

Also during the defendant's case in chief, Dr. Gilbert Bogan testified that he interviewed Reed and reviewed the reports from Dr. Reifman and those reports that Dr. Reifman examined. Based upon the foregoing, Dr. Bogan's opinion was that Reed was legally insane when he shot Robertson because he could not conform his conduct to the requirements of the law. However, Dr. Bogan testified that he would re-evaluate his opinion that Reed was not acting under a delusion if there was in fact an ongoing landlord/tenant dispute between Reed and Haynes; that Robertson had acted as a mediator in the dispute; that Reed's window had been broken two weeks before the shooting; and that Reed thought Sproles broke the window.

In rebuttal, Dr. Gerson Kaplan testified for the State that Reed was legally sane when he shot Robertson. Dr. Kaplan testified that when he examined Reed on January 9 and 13, 1986, Reed was in "good shape"; that he examined the various reports; and that he observed that Reed had never been admitted to a mental hospital as an inpatient. Although Dr. Kaplan testified that Reed was presently suffering from dementia, he testified that the illness had not begun until after the shooting, because Reed was functioning at a normal level indicated by both the tasks he was performing around the time of the shooting and his behavior during the shooting.

Specifically, Dr. Kaplan testified that Reed did not appear to act randomly as a totally confused, totally demented person, that he rather appeared to act purposefully and goal-oriented because he singled out Sproles as his initial target; ran a snack shop and a decorating business; and managed an apartment building. Additionally, Dr. Kaplan testified that Reed showed a certain degree of impulse control because Reed tried to kick Sproles before using the gun; that Reed was neither completely disorganized nor completely demented, because after he shot Robertson, he knew where his van was and walked there calmly; that Reed had the ability to make an intelligent inquiry and respond appropriately because he obeyed the police officer's commands; and that Reed gave a rational reason for the shooting within close proximity to the crime.

Also in rebuttal, Claude Haynes testified. He testified that Robertson introduced him to Reed; that he rented an apartment in Reed's building; that he and Reed had a dispute about rent; that some unknown person broke Reed's car windshield; and that Reed was able to do high quality painting and decorating.

Thereafter, the trial court convicted Reed of attempting to murder Robertson. The court specifically stated that it was not bound by the doctors' or experts' testimony; that it must determine whether, based upon all of the facts, Reed had met the burden of showing by a preponderance of the evidence that he was in fact insane at the time of the incident on May 14, 1985:

> "[T]hat all of the doctors agreed that there was a degree of dementia, they refer to it as chronic, some suggest that it was severe, but we do have a mental disease or defect; that the question is, whether it was sufficient to overbear Reed's will so that he could not conform his conduct to the requirements of the law or to appreciate the criminality of his conduct; that all of the conduct, in [the trial court's] judgment supports the fact that Reed was goal oriented, purposeful, functional, and ra-

tional; and that while Reed may have lacked impulse and control, he may have been angered over that which occurred to him which caused in his judgment, monetary loss, they were not delusional, they were real factors which people each and every day consider."

Subsequently, when the trial court denied post-trial motions, the trial judge noted that there was dementia but that "it did not rise to the point or give support to the defense of insanity, and because of the number of shots and the manner they were fired, the [trial court] found that Reed was responsible for his conduct, and it was intent [*sic*], in light of the factual circumstances, to take the life of the victim."

Reed was sentenced to 40 years in the Illinois Department of Corrections. For the reasons set forth below, we affirm the judgment of the circuit court of Cook County.

 Initially, Reed argues that the trial court abused its discretion by entering a guilty verdict, rather than entering a guilty but mentally ill verdict, contending that the manifest weight of the evidence established that he was mentally ill at the time of the shooting. We disagree. Section 115—3(c) of the Code of Criminal Procedure of 1963 states:

"When the defendant has asserted a defense of insanity, the court may find the defendant guilty but mentally ill if, after hearing all of the evidence, the court finds beyond a reasonable doubt that the defendant:

(1) is guilty of the offense charged; and

(2) was mentally ill at the time of the commission of the offense; and

(3) was not legally insane at the time of the commission of the offense." (Ill. Rev. Stat. 1985, ch. 38, par. 115—3(c).)

Section 6—4 of the Criminal Code of 1961 provides that "mental illness is not an affirmative defense, but an alternative plea or finding that may be accepted, under appropriate evidence, when the affirmative defense of insanity is raised or the plea of guilty but mentally ill is made." (Ill. Rev. Stat. 1985, ch. 38, par. 6—4.) Mental illness is defined in section 6—2(d) of the Criminal Code of 1961 as "a substantial disorder of thought, mood, or behavior which afflicted a person at the time of the commission of the offense and which impaired that person's judgment, but not to the extent that he is unable to appreciate the wrongfulness of his behavior or is unable to conform his conduct to the requirements of law." (Ill. Rev. Stat. 1985, ch. 38, par. 6—2(c).) "A finding of guilty by a trier of fact will not be disturbed on appeal

on the issue of mental illness absent facts indicating a defendant's illness at the time he committed an offense and its decision should be affirmed unless the determination is so improbable or unsatisfactory as to raise a reasonable doubt as to the defendant's sanity." (*People v. Wiley* (1989), 185 Ill. App. 3d 1097, 1106, 541 N.E.2d 1345.) "In ascertaining whether a defendant was suffering from a mental illness at the time of the commission of an offense, the trier of fact must weigh the totality of the evidence and determine the credibility of both lay and expert witnesses." *People v. Wright* (1987), 161 Ill. App. 3d 967, 979, 514 N.E.2d 817, *appeal denied* (1988), 118 Ill. 2d 551, 520 N.E.2d 392.

■ Although the trial judge found that Reed suffered from some degree of dementia, it is clear that the trial judge determined that Reed's mental state did not rise to a level of mental illness that deprived him of all rational thought. (See *Wiley*, 185 Ill. App. 3d at 1106 (wherein defendant Wiley's mental state did not rise to a level which deprived him of all rational thought, even though the trial court determined that he had certain personality defects which were enhanced by the use of alcohol and drugs).) In the case at bar, the trial court explicitly found that Reed was goal-oriented and rational. Dr. Kaplan's opinion and other witnesses' testimony amply support the trial court's conclusion. The fact that Dr. Kaplan's opinion contradicted defendant's expert's opinion does not entitle this court to overturn the trier of fact's findings. Accordingly, the trial court's determination will not be disturbed.

■ Next, Reed argues that the trial court erred in determining that he was sane when he shot Robertson, contending that the trial court improperly disregarded his experts' testimony and improperly relied upon Dr. Kaplan's testimony. We disagree. Sanity is a question of fact, and the trier of fact's determination that a defendant was sane at the time of the offense will not be reversed unless the decision by the trial court, in a bench trial, is so palpably erroneous as to suggest its basis was passion or prejudice. *People v. Gindorf* (1987), 159 Ill. App. 3d 647, 657, 512 N.E.2d 770 (citing *People v. Silagy* (1984), 101 Ill. 2d 147, 169, 461 N.E.2d 415, *cert. denied* (1984), 469 U.S. 873, 83 L. Ed. 2d 156, 105 S. Ct. 227), *appeal denied* (1987), 117 Ill. 2d 548, 517 N.E.2d 1090, *cert. denied* (1988), 486 U.S. 1011, 100 L. Ed. 2d 206, 108 S. Ct. 1743.

■ In order to raise the affirmative defense of insanity, Reed must have proved by a preponderance of the evidence that he was insane at the time of the offense, meaning that he lacked substantial capacity as a result of mental disease or mental defect to either: (1) ap-

preciate the criminality of his conduct; or (2) conform his conduct to the requirements of the law. (Ill. Rev. Stat. 1985, ch. 38, pars. 3—2(b), 6—2(a), 6—2(e); *Silagy*, 101 Ill. 2d at 168.) We find that the trial judge acted within the scope of his discretion when he determined that Reed was sane when he shot Robertson after resolving all contradictions in the expert testimony (*People v. Bouchard* (1989), 180 Ill. App. 3d 26, 35, 535 N.E.2d 1001) and determining the witnesses' credibility (*People v. Gurga* (1986), 150 Ill. App. 3d 158, 163-64, 501 N.E.2d 767, *appeal denied* (1987), 114 Ill. 2d 549, 508 N.E.2d 731). The trial judge, acting as the trier of fact, was allowed to accept a part of any expert's testimony and reject other parts of the testimony. The trier of fact may accept one expert's opinion over another, or reject all expert testimony and rely solely on lay testimony to conclude that the defendant was sane. (*Bouchar*, 180 Ill. App. 3d at 35.) Although the defense expert's opinion was that Reed suffered from dementia, the trial court found that Reed could conform his conduct to the requirements of the law and appreciate the criminality of his conduct, and that his conduct was goal-oriented, purposeful, functional, and rational. Because there was sufficient testimony to support this conclusion, the trial court's finding will not be disturbed.

 █ Additionally, Reed argues that he was denied a fair trial because the State did not comply with Supreme Court Rule 412(d) (107 Ill. 2d R. 412(d)) and failed to notify him seven days before trial that Claude Haynes would testify in rebuttal. Even though the State did not comply with Supreme Court Rule 412(d), we find that Reed was not denied a fair trial because Haynes' testimony was merely cumulative and, therefore, not prejudicial. Moreover, we reject Reed's contention that he was denied a fair trial. In a bench trial, the trial court is presumed to have considered only competent evidence. (*People v. Carter* (1985), 135 Ill. App. 3d 403, 411, 481 N.E.2d 1012, citing *People v. Perez* (1983), 115 Ill. App. 3d 446, 450 N.E.2d 870.) As discussed above, the trial court's finding that Reed was sane when he shot Robertson was based upon the evidence adduced at trial and the trial court's analysis of the witnesses' credibility.

Based upon the foregoing, Reed's conviction and sentence are affirmed.

Affirmed.

MANNING, P.J., and CAMPBELL, J., concur.