*In re* MARRIAGE OF THERESA D. LaSHELLE, Petitioner-Appellee, and RICKY L. LaSHELLE, Respondent-Appellant.

Second District No. 2—90—0732

Opinion filed May 16, 1991.

William R. Shirk, of Weinstine & Shirk, of Morrison, for appellant.

No brief filed for appellee.

JUSTICE McLAREN delivered the opinion of the court:
Respondent, Ricky LaShelle, appeals the orders of the circuit court which found him responsible for certain obligations arising from the judgment dissolving his marriage with petitioner, Theresa LaShelle. The issue is whether the trial court's determination that respondent's obligation to pay a debt is in the nature of child support and thus not dischargeable by bankruptcy, pursuant to section 523(a)(5) of the Bankruptcy Code (Code) (11 U.S.C.A. §523(a)(5) (West 1979)) is against the manifest weight of the evidence.

Petitioner has not filed a brief, and we review this matter pursuant to the guidelines of *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128.

The parties were married on September 9, 1977, and two children were born to the marriage. Petitioner filed a petition to dissolve the marriage on May 10, 1985, and after a hearing on November 22, a judgment dissolving the marriage was entered on December 19, 1985. Because of the numerous other judgments in this cause, we refer to this judgment as the "decree." The decree contained the following provisions:

"3. That the Plaintiff [Petitioner] herein is hereby awarded the marital residence located at 1600 Erie Avenue, Savanna, Carroll County, Illinois; and that the Defendant, RICKY L. LaSHELLE, is hereby ordered and directed to execute a quitclaim deed, quitclaiming his interest in said residence, instanter; and that the Plaintiff will be responsible for the first mortgage on said residence to the Clinton Federal Savings and Loan Association; and that the Defendant shall be responsible for the second mortgage to the Thomson State Bank.

4. That the Plaintiff herein shall be responsible for the debt to Montgomery Ward and the debt to her Mastercharge; and that the Defendant shall be responsible for all other debts, including but not limited to the debt to the Thomson State Bank, Amoco Oil, his Mastercharge, Rock Island Aresnal [*sic*] Credit Union for the Jeep, the debt to Blackhawk Credit Union for Plaintiff's car, and the truck; and any other bills which he has incurred in his business, and hold the Plaintiff free and harmless from any liability on same.

\* \* \*

9. That the Defendant herein is hereby awarded the 1977 Ford pickup truck, the 1980 Jeep, the Kenworth semi-truck, his tools which include a log splitter, a battery charger, a chain saw, a 2-wheel trailer, and a weight set.

\* \* \*

12. That after disbursing [part of the income tax refund], there will be a balance of $2,368.37; and that Plaintiff is directed to keep these funds for child support payments in advance at the rate of $25.00 per week, per child, or a total of $50.00 per week, until this sum of money is depleted, which will be on October 18, 1986, at which time the child support payments will be reduced to $15.00 per week, per child, if the same set of circumstances are existing as they exist at this

time, namely: that Defendant is losing $40,000.00 per year, to which he has attested as his net income for 1984 and 1985. If, however, that is not his income, and there has been a change in circumstances and he is making more money, then the child support payments will be re-evaluated by the Court.

13. That both parties hereto are hereby denied maintenance (alimony) from each other."

In 1986, defendant continued to lose money. He approached the Thomson State Bank about settling his secured debts. He said that, if he could not sell his truck, he would have to file for bankruptcy protection. On July 12, 1986, he made a deal whereby he sold the Kenworth tractor to James R. Ostendorf in return for his paying off the secured notes to the bank. In addition, Ostendorf signed a paper which stated that he "agrees in return for Rick and Theresa LaShelles [sic] selling him their 1978 Kenworth Tractor, *** to pay the *** [mortgage] loans off at the rate of $300.00 per month plus interest at the Thomson State Bank." Petitioner also signed the assignment of the title of the truck. Respondent and Ostendorf made few, if any, payments on the second mortgage loan to the Thomson State Bank. Respondent subsequently filed a petition under the Bankruptcy Code, scheduled the debt to the Thomson State Bank, and received an order of discharge. See 11 U.S.C.A. §§727, 524 (West 1979).

On May 27, 1987, petitioner filed a petition for a rule to show cause why respondent should not be held in contempt because he was in arrears $810 in child support payments; the second mortgage loan was mentioned, but the petition did not specifically state he had failed to pay it. The circuit court found that respondent was not in contempt of court, found that the arrearage was then $1,010 and ordered respondent to make the payments on the second mortgage loan commencing July 15, 1987. Petitioner filed another petition for a rule to show cause, and the court entered a memorandum opinion in which it ruled that respondent's obligation to pay the second mortgage was in the nature of child support and thus not dischargeable under Code section 523(a)(5)(B). In continuing proceedings the circuit court found respondent not to be in contempt of court for his failures to pay because he had insufficient income, and the court incorporated the findings of the memorandum opinion. Respondent appeals that part of the order in which the circuit court determined his obligation to pay the second mortgage loan was not dischargeable.

The circuit court based its ruling on its reading of the transcript of the original dissolution proceedings on November 22, 1985. The circuit court noted that petitioner's counsel had stated, without contra-

diction: "Due to the fact that Mr. LaShelle is giving up his interest in the marital residence we are not asking for maintenance and we will waive maintenance at this time. We would also ask that he be denied maintenance." The trial court had also said in 1985: "Now, we have got $10,000.00 in a second mortgage that he is to be responsible for. I think he should pay that off as quickly as possible. If he doesn't take care of that she is going to lose the house anyway. I would suggest that that be a big priority to pay that debt first." The circuit court noted the trial court's statement that it was troubled by the income of the parties. Respondent was not going to be able to support three people on her annual income of $12,000, and the child support payments of $25 per week were "poverty level," but the court could not order a payment it knew respondent could not pay. Despite the respondent's losses, the trial court ordered him to pay $15 per week once the income tax refund was exhausted. The trial court made a final statement: "I would sure hope that the second mortgage on the house is given first priority. Your children need a home."

Based on the above comments of the trial court at the time of the dissolution of the marriage, the trial court determined that respondent's assumption of the second mortgage debt was not part of the property settlement but rather in lieu of maintenance and child support. The trial court found respondent liable for the debt but did not find him in contempt. Following respondent's motion to reconsider, the trial court also ruled that the debt was not dischargeable under section 523(a)(5)(A) on the ground it was assigned to Ostendorf. Respondent appeals.

■■ ■ The Bankruptcy Code provides a debtor a means where he might obtain a "fresh start" unencumbered by the claims of creditors. A successful petition under title 11 results in an order of discharge, the effect of which is to void any prepetition judgment against the debtor and to operate as an injunction against the continuation of any action to collect a debt from the debtor or his property. (11 U.S.C.A. §524 (West 1979).) Section 523, however, provides several exceptions where certain kinds of debts are not dischargeable for public policy reasons. For example, the continuing responsibility to make child support and maintenance payments is not dischargeable, unless the payments are in actuality part of a property settlement distribution.

The trial court found and determined the order of discharge did not prevent petitioner from forcing respondent to pay the second mortgage loan because this obligation was part of an order for support rather than part of a distribution of property. The standard of

review in the cause before this court is whether the trial court's determination is against the manifest weight of the evidence.

Respondent argues that the debt was dischargeable under both subsections of section 523(a)(5), which reads as follows:

"(a) A discharge under section 727 *** does not discharge an individual debtor from any debt—

* * *

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law or otherwise ***; or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support." 11 U.S.C.A. §523(a) (West Supp. 1991 & West 1979).

■ With regard to section 523(a)(5)(A), respondent has confused an assignment of rights with a delegation of duties. Rights are assigned; duties are delegated. Section 523(a)(5)(A) operates only when the right to collect payment on a debt has been assigned, not when the duty to pay a debt has been delegated. There was no showing that *petitioner* assigned her right to have the debt paid.

■ ■ Whether a debt is nondischargeable as being in the nature of maintenance or support is a matter of Federal, not State, law, but Federal and State courts have concurrent jurisdiction to determine whether section 523(a)(5) excepts such debts from the discharge. (*In re Marriage of Lytle* (1982), 105 Ill. App. 3d 1095, 1099.) The label attached to a decree and the language used in the decree are not controlling in determining dischargeability; rather, the court must look to the substance of the order for payment to determine the essential nature of the obligation. *Lytle*, 105 Ill. App. 3d at 1099-1100.

■ Because the decree does not explicitly state whether the second mortgage debt is part of the property division or maintenance or support, other factors may be used in determining the nature of the debt to a third party, including whether the decree otherwise includes provisions for payments to the ex-spouse; whether there was any indication that the hold-harmless provision was intended to balance the relative income of the parties; whether the hold-harmless provision is in the midst of other provisions allocating property; and whether the

hold-harmless provision describes the character and method of payment. (*In re Coil* (7th Cir. 1982), 680 F.2d 1170, 1172; *In re Woods* (7th Cir. 1977), 561 F.2d 27, 29.) These factors, however, may be inconclusive in determining the intent of the court and the parties at the time of the entry of the decree. *Coil*, 680 F.2d at 1171; *In re Slingerland* (S.D. Ill. 1988), 87 Bankr. 981, 987.

■ Respondent argues that, under these factors, the responsibility for the second mortgage loan was part of the property division and not part of an order for support. Respondent notes that the second mortgage loan was incurred as a business loan for the operation of his truck. While petitioner received the residential assets and the attendant consumer debts, respondent received the business assets, namely, the truck, and the attendant debts of the business, including the second mortgage loan; thus, his responsibility arose as part of the division of assets. Respondent also claims that petitioner received a greater share of the net assets after considering all debts. The trial court specifically denied maintenance to both parties; this provision was in the lower part of the decree near the child support sections and away from the division of property sections of the decree. The obligation did not terminate upon petitioner's death or remarriage as maintenance and support would. The decree does not refer to the debt responsibility as maintenance or support. Petitioner was young, healthy, employed at a salary greater than respondent's, and able to support herself. The debt distribution was not an attempt to equalize income. Finally, paragraph 3 of the decree did not contain a hold-harmless provision as paragraph 4 did.

While each of these factors has been used by courts to determine that a debt was not in the nature of maintenance or support, we do not believe they are controlling in this case. Concerning the decree itself, we find that the debts secured by the house were discussed in the paragraph concerning the house; that does not mean that the debts could not be part of the trial court's child support consideration, but only that it was more convenient to organize the decree by asset. The decree is not otherwise split into separate sections of custody, visitation, property division, support and maintenance. We also note that the trial court addressed the second mortgage twice at the 1985 hearing, first when discussing the disposition of the house and again when discussing support. There was no reason to put the same obligation in writing twice on the same document.

The order to make the payments was not over and above that necessary for the maintenance and support of the family. (*In re Marriage of Rowden* (1987), 163 Ill. App. 3d 869, 873; *Lytle*, 105 Ill. App.

3d at 1100.) Petitioner may have been young and employed, but she also had two young children, and her salary was only $12,000, which the trial court noted was poverty level even with additional support of $15 to $25 per week. (*Cf. Lytle*, 105 Ill. App. 3d at 1100 ("young, healthy, employed and without dependents").) Respondent made no showing that petitioner received a greater share of the assets. The trial court could not attempt to equalize the parties' incomes because respondent's income was admittedly uncertain, and the decree made such an explicit finding.

Instead, the situation here is similar to that of *In re Walter* (D. Del. 1985), 50 Bankr. 523, in which the parties became jointly liable on a loan secured by a second mortgage on their home. The proceeds were used to buy a truck for the debtor's business. (50 Bankr. at 524.) After their marital separation and the debtor's petition in bankruptcy, the bankruptcy court held that the debt was not dischargeable because the other provisions for support together with the ex-wife's earnings would have been insufficient to maintain daily necessities and housing. The debtor's agreement to assume the second mortgage was essential to maintain the family home as of the date of the separation agreement. (50 Bankr. at 525.) In contrast, where such payments on the second mortgage were not necessary to provide for continuing needs, the debt was considered part of the property division and dischargeable. (*In re Hysock* (D. Del. 1987), 75 Bankr. 113, 114.) Similarly, in *In re Rush* (D. Kan. 1989), 100 Bankr. 55, the debtor claimed that his obligation to pay the $10,000 second mortgage on the home, incurred as his business expense, was part of the property division where the wife received the home and responsibility for the first mortgage. The court, finding the decree to be ambiguous, noted that the ex-spouse had custody of the children, there was an imbalance of income, there was a need for support and a need to have the mortgage payments made, the payments were made directly to the ex-spouse, and a fact sheet admitted in the dissolution proceedings showed the payment to be part of the support consideration; thus, it determined that the obligation was in the nature of support and not dischargeable. (100 Bankr. at 57.) While the last two factors are not present in this cause, the others are persuasive.

Providing shelter is an important part of support, especially in the cause before the court where the petitioner could not pay both mortgages on the home. (See *In re Calisoff* (N.D. Ill. 1988), 92 Bankr. 346, 354.) Other courts have also looked to a spouse's ability to support herself as a key to determining whether a debt was assumed by the other party as part of support or maintenance. In *Slingerland* (97

Bankr. at 985), the parties had sufficient property and income to support themselves without maintenance, and the assumption of the second mortgage loan was found dischargeable. (See also *In re Boggess* (S.D. Ill. 1989), 105 Bankr. 470, 472.) By contrast, the only reason the trial court in the cause before the court did not order maintenance or a greater amount of child support was because respondent was losing money. See also *In re Cockhill* (N.D. Ill. 1987), 72 Bankr. 339, 343 (responsibility for ex-spouse's attorney fees ordered in the decree considered part of the order of support because she did not have sufficient funds to pay them at the time of the dissolution).

Respondent also notes that the obligation does not terminate with death, remarriage or emancipation and is thus not indicative of maintenance or support. However, maintenance may be in the form of maintenance in gross or a property settlement in lieu of maintenance, neither of which terminates upon death or remarriage; these obligations are also not dischargeable in a bankruptcy proceeding. (*Rowden*, 163 Ill. App. 3d at 872-73.) Respondent distinguishes *Rowden* by noting that in that case the judgment specifically stated that the obligation to pay a debt and to hold the ex-spouse harmless was in lieu of maintenance and maintenance was otherwise forever barred and terminated; respondent also notes that there was no hold-harmless clause in paragraph 3 of the decree. Nevertheless, at the 1985 hearing, petitioner's counsel stated without contradiction that petitioner was waiving maintenance in return for the house. Paragraph 4 included a hold-harmless clause and included a list of respondent's business debts, such as the debts to the Thomson State Bank.

Based on the record of the 1985 dissolution proceedings, it is not against the manifest weight of the evidence that the trial court determined the obligation to pay the second mortgage debt as a form of support.

For the above reasons, the order of the circuit court of Carroll County is affirmed.

Affirmed.

BOWMAN and GEIGER, JJ., concur.