*In re* MARRIAGE OF JAMES H. ADAMSON, Petitioner-Appellant, and PHYLLIS M. COSNER, f/k/a Phyllis M. Adamson, Respondent-Appellee.

Second District No. 2—98—1259

Opinion filed November 22, 1999.

Joseph F. Mirabella and George F. Frederick, both of Mirabella & Kincaid, P.C., of Wheaton, for appellant.

Danielle M. Jaeschke, of Huck & Brisske, L.L.C., of Wheaton, and Robert G. Black, of Naperville, for appellee.

JUSTICE HUTCHINSON delivered the opinion of the court:
Following the dissolution of their marriage, respondent, Phyllis

Cosner, f/k/a Phyllis Adamson, petitioned the trial court to enter a rule to show cause against petitioner, James Adamson, for his failure to make maintenance payments to respondent. The trial court issued the rule and subsequently found petitioner in contempt. Petitioner moved to vacate the contempt orders, and the trial court denied his motion. Petitioner appeals, contending that the trial court lacked jurisdiction to enter the amended judgment of dissolution that created the maintenance obligation and that the trial court erred when it held that the obligation was not discharged by petitioner's subsequent bankruptcy. We affirm.

On December 22, 1992, the trial court entered a judgment dissolving the parties' marriage and incorporating a marital settlement agreement. In the provisions relevant to this appeal, the parties agreed that the marital residence had a value of $820,000 and was subject to a first mortgage of $189,400 and a home equity loan of $72,200. Petitioner agreed to release his interest in the residence to respondent, and she agreed to assume the first mortgage. Petitioner agreed to assume the home equity loan and refinance the loan in his own name. The parties also agreed to divide equally a money market account valued at approximately $25,000. Finally, each party agreed to a permanent and irrevocable waiver of maintenance.

On August 1, 1996, respondent petitioned the trial court for a temporary restraining order and preliminary injunction. In the petition, respondent alleged, *inter alia*, that after the parties signed the marital settlement agreement but before judgment was entered, petitioner increased the home equity loan on the marital residence to $125,000 and borrowed an additional $34,000 that he secured with a second mortgage on the marital residence. The petition further alleged that petitioner had defaulted on both loans and that the creditors had initiated foreclosure proceedings. Respondent moved the trial court to order petitioner to disclose his interest in various accounts, to freeze some of petitioner's assets, and to order petitioner to satisfy the encumbrances he had placed on the marital residence including the $125,000 home equity loan and the $34,000 second mortgage.

On December 12, 1996, the parties agreed to modify the judgment of dissolution. The modified agreement granted respondent possession of the marital residence subject to a $385,000 mortgage for which the parties were jointly liable. Respondent was responsible for a monthly mortgage payment of $2,785.19. Petitioner waived any interest he may have had in the money market account. Finally, petitioner agreed to pay respondent monthly maintenance of $1,379.10 for 139 months with a final payment of $635.10. The parties agreed that petitioner's obligation to pay maintenance would survive his death and would be

binding on his estate unless he purchased life insurance sufficient to satisfy the maintenance obligation.

On February 13, 1997, at respondent's request, the trial court entered an order requiring petitioner to show cause why he should not be held in contempt for failure to pay maintenance and provide respondent with proof of insurance as required by the modified agreement. The matter was continued several times, and on April 30, 1998, the trial court found petitioner in indirect civil contempt and ordered him incarcerated in a work release program until he paid a purge amount of approximately $9,000. Petitioner subsequently filed an emergency motion to vacate the April 30 order. The trial court continued the matter for hearing and stayed the portion of its order that incarcerated petitioner.

Petitioner subsequently filed a motion to vacate pursuant to section 2—1301 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—1301 (West 1998)). Petitioner asked the trial court to vacate all orders entered after July 7, 1997, and alleged that he had filed a petition for bankruptcy on that date and had received a discharge of all debts on November 11, 1997. Petitioner argued that the orders were void because they had been entered in violation of the automatic stay provisions of the Bankruptcy Code (see 11 U.S.C. § 362 (1994)) and because the obligation was a property settlement that had been discharged. At the hearing, petitioner also argued that the modified agreement was void *ab initio* because the trial court lost jurisdiction to modify the judgment of dissolution. The trial court denied petitioner's motion, finding that it had continuing jurisdiction of the case or, alternatively, that the parties had revested the trial court with jurisdiction. The trial court further found that the obligation was intended as maintenance and was therefore not discharged by petitioner's bankruptcy. Petitioner appeals.

As an initial matter, after this appeal was fully briefed, respondent's attorneys filed a motion for leave to withdraw as attorneys of record. We grant that motion.

■ Next, we must address respondent's motion, which we have taken with case, to dismiss the appeal. Respondent argues that, because petitioner's motion to vacate was brought pursuant to section 2—1301 of the Code (735 ILCS 5/2—1301 (West 1998)), he could not challenge any order entered more than 30 days prior to his motion to vacate. However, a void judgment may be attacked at any time " 'without any showing of diligence or meritorious defense.' " *Bank of Matteson v. Brown*, 283 Ill. App. 3d 599, 606 (1996), quoting *Dec v. Manning*, 248 Ill. App. 3d 341, 347 (1993). Moreover, the courts should be liberal in recognizing a motion to vacate as a collateral attack on a

judgment even if mislabeled. *Bank of Matteson*, 283 Ill. App. 3d at 606. In this case, although petitioner labeled his motion to vacate as a section 2—1301 motion, the substance of the motion and the arguments made at the hearing clearly indicate that petitioner was attacking the modified judgment as void. Therefore, respondent's motion to dismiss is denied and we will address the merits of petitioner's appeal.

■ Petitioner first contends that the amended judgment and the subsequent enforcement orders were void because the trial court lacked jurisdiction. Generally, the lack of subject matter jurisdiction can be raised at any time and may be raised for the first time on appeal. *In re Marriage of Jerome*, 255 Ill. App. 3d 374, 388 (1994); see also *City of Marseilles v. Radke*, 287 Ill. App. 3d 757, 761 (1997). A judgment entered by a court lacking subject matter jurisdiction is a nullity and may be attacked at any time in any proceeding. *Jerome*, 255 Ill. App. 3d at 388. When a court lacks subject matter jurisdiction, it cannot be conferred by stipulation, consent, or waiver. *Marseilles*, 287 Ill. App. 3d at 761. Our review of a trial court's determination of subject matter jurisdiction is *de novo. Marseilles*, 287 Ill. App. 3d at 761.

Petitioner acknowledges that the trial court had jurisdiction to enter the original judgment of dissolution but argues that the court lost the jurisdiction to modify that judgment after 30 days. Respondent argues that the trial court retained jurisdiction to modify the judgment incident to its power to enforce the judgment, and alternatively argues that the parties revested the trial court with jurisdiction when they agreed to modify the judgment. Our analysis of these competing arguments centers on a single undisputed fact—petitioner and respondent agreed to modify the judgment.

■■ Generally, a trial court loses jurisdiction in a dissolution action 30 days after it enters a final order. *In re Marriage of Schauberger*, 253 Ill. App. 3d 595, 599 (1993). However, a trial court retains jurisdiction to enforce its order past 30 days when the judgment orders or contemplates further performance by the parties. *Anest v. Bailey*, 265 Ill. App. 3d 58, 66 (1994). In a dissolution action the trial court retains extraordinary continuing jurisdiction not applicable to civil cases generally. See *In re Marriage of Wonderlick*, 259 Ill. App. 3d 692, 694 (1994). However, a trial court's jurisdiction to enforce a dissolution judgment does not include the jurisdiction "to engraft new obligations onto the judgment." *In re Marriage of Hubbard*, 215 Ill. App. 3d 113, 117 (1991); see also *In re Marriage of Himmel*, 285 Ill. App. 3d 145, 151 (1996) (holding that section 502 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/502 (West 1998)) does not supersede the usual two-year limitations period of section 2—1401 of the Code).

■ In this case, we find that the trial court properly entered a modified judgment as part of its continuing power to enforce the 1992 judgment. Respondent invoked the trial court's continuing jurisdiction to enforce petitioner's obligation to refinance the home equity loan secured by the marital residence. The parties subsequently agreed to modify their marital settlement agreement to remove petitioner's obligation to pay this debt and replace it with an obligation to pay maintenance. Generally, the trial court lacks jurisdiction to order a modification of this nature. See *Hubbard*, 215 Ill. App. 3d at 117. However, section 502(a) of the Illinois Marriage and Dissolution of Marriage Act (the Marriage Act) encourages parties to enter into marital settlement agreements. 750 ILCS 5/502(a) (West 1998); see also *In re Marriage of Ingram*, 259 Ill. App. 3d 685, 689 (1994). This bias in favor of allowing the parties to craft their own resolution of disputed issues should apply with equal force whether the dispute arises before dissolution or as part of a latter postdecree enforcement action. The parties are in the best position to evaluate their own circumstances, and they should be allowed to resolve their dispute by agreement even when the trial court would not, or could not, order the same resolution. Consequently, when the parties agree to settle a postdecree dispute by modifying the underlying judgment or marital settlement agreement, the trial court should enforce the new agreement unless it is unconscionable. See 735 ILCS 5/502(b) (West 1998).

■ Petitioner also argues that, pursuant to section 510(c) of the Marriage Act (735 ILCS 5/510(c) (West 1998)), respondent was barred from receiving maintenance because she had remarried, and subsequently divorced, prior to the entry of the modified judgment. Section 510(c) provides that, "[u]nless *otherwise agreed by the parties* in a written agreement ***, the obligation to pay future maintenance is terminated upon *** the remarriage of the party receiving maintenance." (Emphasis added.) 750 ILCS 5/510(c) (West 1998). Petitioner agreed to the modified judgment after respondent had remarried; implicit in this agreement is a waiver of the remarriage provision of section 510(c). We will not allow petitioner to challenge the trial court's authority to order that to which he agreed. See *In re Marriage of Fields*, 288 Ill. App. 3d 1053, 1061 (1997).

■ Petitioner further argues that the trial court could not modify the parties' original agreement because they had agreed that the terms of that agreement were nonmodifiable. Section 502(f) of the Marriage Act provides, in pertinent part, that "the judgment may expressly preclude or limit modification of terms set forth in the judgment if the agreement so provides." 750 ILCS 5/502(f) (West 1998). The limitations on modification in section 502(f) allow the parties to a dissolu-

tion to maximize the benefits of future planning and eliminate the uncertainties arising from the fear of future motions to increase or decrease the parties' obligations. *In re Marriage of Chalkley*, 99 Ill. App. 3d 478, 481 (1981). Here, the parties agreed that the terms of the original judgment could not be modified, and allowing the trial court to modify those provisions would be contrary to the purposes of section 502(f). However, the judgment was modified, not by the trial court, but by the parties' own agreement. This modification is not inconsistent with section 502(f). Either party could have forced the other to abide by the terms of the original judgment and thereby preserved the value inherent in the certainty provided by section 502(f). Nevertheless, the parties agreed to modify the agreement. If the parties may agree between themselves that certainty is beneficial, there is no reason why they should not later be allowed to agree that modification provides benefits that outweigh those provided by certainty. Consequently, we hold that although the trial court was precluded from modifying the agreement, the parties themselves retained the power to modify their agreement in response to changed circumstances.

 The revestment doctrine further supports our conclusion that the trial court had jurisdiction to enter the modified judgment of dissolution. Under the revestment doctrine, litigants may revest a court that has general jurisdiction over the matter with both personal and subject matter jurisdiction over the particular cause after the 30-day period following final judgment. *People v. Kaeding*, 98 Ill. 2d 237, 240 (1983). Revestment applies when the parties "actively participate without objection in proceedings which are inconsistent with the merits of the prior judgment." *Kaeding*, 98 Ill. 2d at 241. The parties' conduct is inconsistent with a prior order if the conduct reasonably can be construed as an indication that the parties do not view the prior order as final and binding. *Kandalepas v. Economou*, 269 Ill. App. 3d 245, 251 (1994).

Petitioner argues that the revestment doctrine does not apply to a dissolution action and cites in support of his position *Licciardi v. Collins*, 180 Ill. App. 3d 1051, 1056 (1989). In *Licciardi*, the reviewing court held that the revestment doctrine does not apply in a dissolution action after the period to seek relief under section 2—1301(e) or 2—1401 of the Code has expired. *Licciardi*, 180 Ill. App. 3d at 1056, citing *Meyer v. Meyer*, 409 Ill. 316, 319 (1951). In *Meyer*, the parties had reconciled and sought to vacate the decree dissolving their marriage. The supreme court held that, because divorce is a legislative creation, jurisdiction was conferred on the courts only through statute, and general equitable powers did not expand a trial court's jurisdiction. *Meyer*, 409 Ill. at 319.

■ More recently, however, courts have held that, under article VI, section 9, of the 1970 Illinois Constitution (Ill. Const. 1970, art. VI, § 9), the circuit courts are courts of general jurisdiction that may adjudicate any justiciable matter. *Schauberger*, 253 Ill. App. 3d at 602. Legislation that creates a right not recognized in the common law or equity defines a justiciable matter but does not limit or preclude a court's jurisdiction over the matter. *Schauberger*, 253 Ill. App. 3d at 602. Consequently, in a dissolution action, if a trial court fails to follow the requirements of the Marriage Act, the error is procedural, not jurisdictional, and the principles of waiver apply. See *Fields*, 288 Ill. App. 3d at 1059-60 (holding that the failure to file a written waiver in accordance with section 401(a)(2) of the Marriage Act (750 ILCS 5/401(a)(2) (West 1996)) did not deprive the trial court of jurisdiction when the parties proceeded to judgment without objection). The *Fields* court noted that its holding was "consistent with the modern trend toward giving finality of judgments greater weight than validity of judgments." *Fields*, 288 Ill. App. 3d at 1060.

■ In this case, we find that, consistent with *Schauberger* and *Fields*, the petitioner may not now challenge the trial court's jurisdiction to modify the original judgment. It is undisputed that the trial court had both personal and subject matter jurisdiction to enter the original judgment of dissolution. The parties explicitly agreed to modify the terms of the original judgment, an act that clearly indicates that they did not view the original judgment as final and nonmodifiable. See *Kandalepas*, 269 Ill. App. 3d at 251. Consequently, the parties by their agreement revested the trial court with jurisdiction. See *Schauberger*, 253 Ill. App. 3d at 603.

We note that this modification occurred nearly four years after the original judgment was entered, a time period longer than most revestment cases. See *Schauberger*, 253 Ill. App. 3d at 596-97 (judgment of dissolution vacated four months after entry). However, the length of the delay between the original judgment and the modification does not alter the basic revestment analysis, and *Kaeding* does not, as petitioner suggests, limit the revestment doctrine to that period during which a section 2—1401 petition may be filed. See *Kaeding*, 98 Ill. 2d at 240; see also *Schauberger*, 253 Ill. App. 3d at 601 (holding that revestment provided a basis for jurisdiction independent of section 72 (recodified as amended in section 2—1401)).

Petitioner argues that the Marriage Act limited the trial court's jurisdiction to modify the agreement. The requirements of the Marriage Act are mandatory, but, with rare exceptions, these limitations are procedural and not jurisdictional. *Fields*, 288 Ill. App. 3d at 1059-60. As we observed above, the statute limits the trial court—the par-

ties were free to resolve their dispute by agreement in a manner unavailable to the trial court. Consequently, the parties could waive these statutory restrictions and revest the trial court with jurisdiction to enter a modified judgment incorporating their agreement. See *Fields*, 288 Ill. App. 3d at 1059-60. Moreover, it would be contrary to the interests of judicial economy and simple justice to allow petitioner to escape the obligations to which he agreed by challenging the trial court's jurisdiction. See *Fields*, 288 Ill. App. 3d at 1061.

■ Petitioner also contends that the trial court erred when it determined that the maintenance obligation included in the modified judgment was nondischargeable in bankruptcy. Section 523 of the Bankruptcy Code (11 U.S.C. § 523 (1994)) identifies debts that are excepted from discharge in bankruptcy. Section 523(a)(5) excepts from discharge debts that are

> "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—
>> (A) such debt is assigned to another entity ***; or
>> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support." 11 U.S.C. § 523(a)(5) (1994).

Whether a debt is dischargeable under section 523(a)(5) is a matter of federal law, but state law may be used to develop federal standards. *In re Marriage of Lytle*, 105 Ill. App. 3d 1095, 1099 (1982). Federal and state courts have concurrent jurisdiction to determine whether a debt is dischargeable under section 523(a)(5). *Lytle*, 105 Ill. App. 3d at 1099; see also *In re Marriage of LaShelle*, 213 Ill. App. 3d 730, 735 (1991). We will not reverse a trial court's determination of dischargeability unless it is against the manifest weight of the evidence. *LaShelle*, 213 Ill. App. 3d at 731.

■ The label attached to an obligation and the language used in a decree are not controlling, and a court must examine the substance of the order to determine the nature of an obligation. *LaShelle*, 213 Ill. App. 3d at 735. State and federal courts have identified many factors useful in determining whether an obligation is properly characterized as support or as part of a property settlement. See *In re Marriage of Porter*, 229 Ill. App. 3d 697, 703-04 (1992) (identifying seven factors); *In re Paneras*, 195 B.R. 395, 402 (Bankr. N.D. Ill. 1996) (identifying nine factors). No list of factors is exhaustive or exclusive, and the

mechanical application of even the most exhaustive list of factors is unlikely to yield a clear result. See *In re Reines*, 142 F.3d 970, 973 (7th Cir. 1998) ("[t]he end result of an exercise of this sort is usually a mixed bag of factors pointing in both directions"). However, no matter which individual factors a court identifies, the critical and principal inquiry is whether the divorce court and the parties intended to provide support or divide marital property and debts. *Paneras*, 195 B.R. at 402.

■ Petitioner identifies several factors and argues they suggest his obligation was a property settlement. The parties designated petitioner's obligation as maintenance in the modified judgment. However, that designation is not binding, and we must examine the substance of the agreement to determine its nature. See *LaShelle*, 213 Ill. App. 3d at 735. In Illinois, a support obligation can take several forms, including (1) periodic maintenance, payments for an indefinite period in an indefinite amount subject to modification in response to a change in the parties' circumstances; (2) maintenance in gross, a fixed sum of money, payable in installments for a fixed period of time, that is nonmodifiable; and (3) property settlements in lieu of maintenance, a lump sum payment, often payable in installments, given in exchange for a waiver of rights, including periodic maintenance, that is nonmodifiable. *In re Marriage of Rowden*, 163 Ill. App. 3d 869, 871-72 (1987).

■ Here, the circumstances strongly suggest that, despite the designation in the agreement, petitioner's obligation was not periodic maintenance as ordinarily envisioned by section 510 of the Marriage Act. First, petitioner's obligation is exactly one-half of the monthly mortgage amount respondent assumed under the modified agreement and terminates after a fixed period. Second, the parties agreed that the obligation was nonmodifiable and would survive petitioner's death. These factors suggest that, although labeled maintenance, petitioner's obligation was, in substance, part of the parties' property settlement. See *Rowden*, 163 Ill. App. 3d at 872 (holding the husband's obligation to pay an automobile loan was in the nature of a property settlement in lieu of maintenance). This conclusion is bolstered by the fact that petitioner's maintenance obligation in the modified judgment replaced his obligation in the original judgment to pay the home equity loan, which was subsequently refinanced.

Our conclusion that petitioner's obligation was, in substance, part of the parties' property settlement, however, does not dispose of the issue of whether it was in the nature of support within the meaning of the Bankruptcy Code. See *Rowden*, 163 Ill. App. 3d at 873 (holding that husband's obligation to pay debt was "in the nature of mainte-

nance" and nondischargeable). Other Illinois cases have held that assumption of a debt can be in the nature of support. See *LaShelle*, 213 Ill. App. 3d at 738 (holding that husband's obligation to pay second mortgage was a form of child support and nondischargeable); see also *Porter*, 229 Ill. App. 3d at 704-05. Consequently, a finding that petitioner's maintenance obligation was, in substance, the assumption of a debt does not preclude a finding that the obligation was in the nature of support.

The procedural history of this case makes it difficult to apply many of the factors generally considered when determining whether an obligation to pay a debt is in the nature of support. For example, because the modification was made by agreement, the parties presented no evidence of their respective financial situations in 1996. See *Porter*, 229 Ill. App. 3d at 703 (holding that one of the most important factors is the financial circumstances of the parties). The trial court received evidence of petitioner's ability to pay the maintenance obligation at a hearing on the rule to show cause in 1998. However, we will not, as petitioner suggests, consider the parties' circumstances at the time of the dischargeability determination to determine their intent at the time of the modified agreement. See *Porter*, 229 Ill. App. 3d at 704 (noting that the parties' intention should be determined from the facts existing at the time the court entered its order or the time the agreement was approved). We note, however, that in the petition which prompted the modification, respondent alleged that she earned $25,000 annually but paid $19,800 annually in real estate taxes and $1,641 monthly for the mortgage on the marital residence. Consequently, we find no support in the record for petitioner's argument that his obligation should have been dischargeable because it was over and above respondent's need for maintenance. See *Rowden*, 163 Ill. App. 3d at 873.

■ The language of the modified judgment supports a finding that the parties intended the obligation to be in the nature of support. Several factors are persuasive here. First, the payments were spread over a long period of time (140 months). See *Porter*, 229 Ill. App. 3d at 704; *Paneras*, 195 B.R. at 401. Second, the modified agreement struck respondent's earlier waiver of maintenance. See *Porter*, 229 Ill. App. 3d at 704. Third, the obligation was contained in a separate section and clearly identified as maintenance. See *Paneras*, 195 B.R. at 401-02. Finally, the modified agreement included clear language indicating that the parties intended that the payments would be taxable to the recipient. See *Porter*, 229 Ill. App. 3d at 704; *Paneras*, 195 B.R. at 402. The parties' treatment of the obligation in their modified agreement strongly suggests that it was in the nature of support.

Moreover, the parties intended that the obligation would be treated as support. Petitioner alleged in his motion to vacate that the obligation was characterized as maintenance to protect respondent should he file bankruptcy. Respondent similarly alleged in her response that petitioner's financial situation was weak, the parties anticipated that petitioner might file for bankruptcy, and they intentionally characterized the obligation as maintenance in an attempt to protect her if petitioner did file for bankruptcy protection. On appeal, petitioner does not dispute that the parties intended to characterize the obligation as maintenance, but argues instead that the parties' attorneys cleverly but erroneously tried to make the debt nondischargeable. Nevertheless, the critical and principal inquiry is whether the parties intended an obligation as support. *Paneras*, 195 B.R. at 402. Any marital settlement agreement is the result of a complex analysis considering many factors. In this case, the parties apparently considered the possibility that petitioner might file bankruptcy before they created his maintenance obligation. However, we should not ignore the parties' intent to create an obligation in the nature of support simply because they recognized the legal consequences of their agreement. The public policy favoring a fresh start for debtors did not prevent petitioner from voluntarily assuming a nondischargeable obligation. See *Klingman v. Levinson*, 831 F.2d 1292, 1296 n.3 (7th Cir. 1987) (holding that, although public policy prevented a judgment debtor from contracting away his right to a discharge in bankruptcy, that policy did not prevent him from stipulating that the debt arose from a nondischargeable defalcation). Consequently, we find that the trial court's determination that petitioner's maintenance obligation was nondischargeable was not against the manifest weight of the evidence.

For the foregoing reasons the order of the circuit court of Du Page County is affirmed.

Affirmed.

BOWMAN, P.J., and RAPP, J., concur.