NO. 4-05-0475   Filed: 3/10/06

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | |
|---|---|
| In re:  the Marriage of<br>MARVIN E. MILLER,<br>    Petitioner-Appellant,<br>    and<br>BRENDA J. MILLER,<br>    Respondent-Appellee. | ) Appeal from<br>) Circuit Court of<br>) Macoupin County<br>) No. 95D63<br>)<br>) Honorable<br>) Theodis P. Lewis<br>) Thomas P. Carmody,<br>) Judges Presiding. |

JUSTICE APPLETON delivered the opinion of the court:

The question presented by this appeal is whether a trial court has jurisdiction to vacate and reopen a final judgment of dissolution of marriage entered some six years earlier.  The question arose when, in 2001, petitioner, Marvin E. Miller, asked the court to enforce the July 1995 judgment of dissolution that had awarded him, inter alia, the marital home.  In January 2002, respondent, Brenda J. Miller, asked the court to set aside the 1995 final judgment, claiming that neither she nor petitioner knew the judgment of dissolution had been entered until March 2001.  She claimed that since 1995, the two had been living together as husband and wife and, as a result, had jointly acquired additional property and financial obligations.

In April 2003, the trial court set aside its July 1995 judgment and entered a new judgment.  In May 2003, petitioner sought to vacate the new judgment as void, claiming the court lacked jurisdiction to grant the relief it did.  In May 2005, the trial court denied petitioner's request to vacate the order.  Petitioner appeals from that denial.  We

affirm.

## I. BACKGROUND

Petitioner filed a petition for dissolution of marriage on March 21, 1995, and respondent filed an answer and cross-petition on April 13, 1995. Each party was represented by separate counsel. On May 15, 1995, the trial court, Judge Thomas P. Carmody presiding, conducted a hearing on grounds for the dissolution. The docket entry for that date stated :

"Present in court the petitioner, Marvin E. Miller, and his attorney, J. Richard Meno. The respondent does not appear but is represented by attorney William Katich. Respondent [sic] and his attorney agree to proceed on grounds today. Witness sworn; evidence heard. Based upon the testimony presented, the [c]ourt finds that the parties are entitled to a dissolution of their marriage on grounds of extreme and repeated mental cruelty. Court further finds that the property settlement agreement entered into between the parties[,] including a waiver of maintenance[,] is fair and reasonable and not unconscionable. Attorney Meno is to prepare the written [j]udgment and submit the same to opposing counsel for his approval and then to the [c]ourt for entry."

On July 13, 1995, Judge Carmody entered the written judgment of dissolution tendered by counsel, which had been signed as "approved by" both

attorneys. Neither party personally signed the judgment indicating their approval nor was there a written settlement agreement in the file bearing their signatures. The clerk was directed to send file-marked copies to the attorneys. The court directed the case to be closed and the cause stricken.

Almost six years passed before petitioner, through attorney Larry Clark, in May 2001, filed a petition for rule to show cause why respondent should not be held in contempt of court for failing to comply with the property distribution set forth in the 1995 judgment of dissolution. On July 26, 2001, the trial court allowed attorney Clark's motion to withdraw as counsel for petitioner. The record does not indicate any further action was taken on petitioner's request for contempt.

On January 28, 2002, attorney Robert Watson on behalf of respondent filed a "petition for declaratory judgment," requesting a determination of the ownership and distribution of both marital and nonmarital assets. The petition alleged that until March 2001, neither party was aware that a final judgment of dissolution of marriage had been entered. Respondent had not complied with any of the property distribution provisions set forth in the judgment because (1) she was not familiar with the content of the provisions, and (2) she assumed the dissolution proceedings remained pending. Respondent alleged that until March 2001, she and petitioner had resided together as husband and wife, acquired personal property together, and filed joint income tax returns each year. Respondent asked the trial court to redistribute the marital and nonmarital assets in light of the couple's actions since July 1995.

Although not part of the record before us, we discern from the testimony and argument presented to the trial court at the various hearings in the instant

proceedings that the following occurred. In May 2001, respondent obtained an order of protection against petitioner. At one of the hearings related to the order of protection, the trial court, Judge Diane Brunton presiding, entered a temporary order awarding respondent the marital home. It was in relation to the order of protection proceedings that the parties discovered they had been divorced since 1995. Because the final judgment of dissolution awarded petitioner the home, Judge Brunton amended the temporary order and ordered respondent to vacate the home.

On June 20, 2002, the trial court conducted a hearing on respondent's "petition for declaratory judgment." Petitioner appeared pro se, and respondent appeared personally and with attorney Watson. Petitioner testified first as an adverse witness for respondent. He said in May 1995 he had appeared in court and testified regarding his request for temporary possession of the marital home. He said his request was granted that day. He could not recall whether respondent or her attorney was present in court. In an uncooperative and argumentative manner, petitioner testified that he was not sure whether he and respondent had filed joint income tax returns since 1995, and he denied receiving any increased veteran's benefit as a result of being married. He said respondent moved back into the marital home sometime in 1995 and remained there through 2001. He said he had discovered only a year ago that he and respondent were no longer married. He presented no testimony or evidence as to whether he and his attorney had negotiated and entered into a marital settlement agreement in 1995. Petitioner then testified as to his assets and debts acquired since 1995.

Respondent testified that in May 1995, petitioner, his attorney, her

4

attorney, and she attended a meeting at the courthouse to discuss temporary possession of the marital residence. She said that was the only occasion she had gone to the courthouse with regard to the dissolution. It was her opinion that the only issue decided that day was that petitioner would receive temporary possession of the home. She said after the meeting they "were going to decide what [they] were going to do." She said she had never appeared before a judge in relation to the dissolution.

At this courthouse meeting, the parties had agreed that, due to petitioner's disability, he could have temporary possession of the home. Despite this agreement, respondent had not moved out of the house for any extended period since 1995. On occasion, she would spend a "couple days" with her daughter. She and petitioner continued to live as husband and wife. Since 1995, they had made joint purchases and acquired joint debt. She moved out of the home for the last time in May 2001. She did not know that a final judgment of dissolution had been entered in 1995 and had not signed any documents agreeing to a property settlement. She further disclaimed knowledge that petitioner had agreed to any final division of property.

The common-law record indicates that for approximately one year, the parties bickered about when, by whom, and how the court-ordered appraisals of certain marital property should be conducted and paid. On November 19, 2002, petitioner filed a pro se motion to dismiss, and on December 2, 2002, the trial court conducted a hearing and denied petitioner's motion. We have before us no record of this hearing and no transcript or bystander's report (166 Ill. 2d R. 323(c)) or agreed statement of facts (166 Ill. 2d R. 323(d)).

On April 15, 2003, Judge Carmody resumed the evidentiary hearing on

respondent's petition for declaratory judgment. Respondent again testified that (1) she and petitioner had not realized that a final judgment of dissolution of marriage had been entered; (2) they had, for the most part, continuously resided together; (3) they had filed joint income tax returns; and (4) petitioner had received a monthly marital benefit from the Veteran's Administration.

Petitioner was not represented by counsel during this hearing, so Judge Carmody questioned him. Petitioner said he and respondent separated in 1995 and resided together "off and on" since that time. Petitioner described the nature of the personal property, real property, and debt that he and respondent had acquired before and after 1995. Neither attorney Meno nor attorney Katich testified at the evidentiary hearings (June 20, 2002, or April 15, 2003) about the circumstances of the purported "settlement agreement" presented to the court on May 15, 1995. On April 30, 2003, Judge Carmody entered an order vacating the July 1995 final judgment, which dissolved anew the parties' marriage and distributed their marital and nonmarital assets. Petitioner appealed to this court from that order. On May 20, 2003, attorney Rick Verticchio, on behalf of petitioner, filed an entry of appearance and a motion to dismiss petitioner's appeal. On May 21, 2003, Judge Carmody entered an order dismissing petitioner's appeal without prejudice.

On May 22, 2003, attorney Verticchio, on petitioner's behalf, filed a motion to dismiss respondent's "declaratory judgment" action, citing section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2002)) and claiming the trial court lacked jurisdiction to enter its April 30, 2003, order. In the alternative, petitioner requested the court reconsider its order.

The case lingered for another year, during which time respondent replaced attorney Watson with attorney Kathy Baker-Bowen. Finally, on October 25, 2004, the trial court, Judge Theodis Lewis presiding (due to the retirement of Judge Carmody), conducted a hearing on petitioner's motion to dismiss. Again, we have no record of that testimony and no transcript or bystander's report (166 Ill. 2d R. 323(c)) or agreed statement of facts (166 Ill. 2d R. 323(d)). Thereafter, each party submitted legal memoranda for the court's consideration.

On May 16, 2005, Judge Lewis found the trial court had jurisdiction to enter its April 2003 order and denied both petitioner's motion to dismiss and his motion to reconsider. This appeal followed.

## II. ANALYSIS

Initially, we will attempt to simplify and clarify procedurally what occurred in the trial court. Despite the labels placed on the various motions and petitions before the trial court, we find the substance of those motions and petitions indicate the following occurred procedurally in this case since 1995. See Sarkissian v. Chicago Board of Education, 201 Ill. 2d 95, 102, 776 N.E.2d 195, 200-01 (2002) (it is a motion's substance, not its title, that determines the motion's character).

In May 2001, petitioner, after discovering he was awarded sole ownership of the marital residence in the 1995 final judgment of dissolution, filed a petition to hold respondent in contempt for (1) failing to execute a deed conveying her interest in the residence to him as ordered, (2) representing to another judge in an order of protection case that she should be entitled to possession, and (3) removing items of personal property from the residence in defiance of a court order. This pleading was never

addressed by the trial court.

Instead, in January 2002, eight months after petitioner filed his contempt petition, respondent filed a petition to vacate the 1995 final judgment of dissolution and make another, different equitable distribution of the marital assets and debts acquired and incurred before and after 1995. In June 2002, the trial court heard some evidence on respondent's petition but then continued the hearing to allow the parties to obtain appraisals on certain property. In November 2002, petitioner filed a pro se motion to dismiss respondent's petition to vacate. The court denied petitioner's pro se motion to dismiss.

In April 2003, after hearing additional testimony, the trial court vacated the original judgment of dissolution of marriage, entered a new judgment, and redistributed the assets and liabilities of the parties. In May 2003, petitioner, through counsel, moved to vacate (even though petitioner's motion stated he was moving to dismiss pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2002))) that April 2003 order, claiming the court lacked jurisdiction. He claimed, because respondent's request for relief was filed more than two years after the entry of the judgment, respondent's petition was untimely under section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2002)). Alternatively, petitioner asked the court to reconsider its April 2003 order.

In May 2005, Judge Lewis found the trial court properly had jurisdiction to consider the matter and denied petitioner further relief. Judge Lewis held that because Judge Carmody, in his April 2003 order, specifically found that neither party had agreed to the terms of the judgment (despite the May 15, 1995, docket entry that stated that the parties had agreed to the property distribution), equity and fairness justified a new

property distribution.  "Our review of a trial court's determination of subject[-]matter jurisdiction is <u>de</u> <u>novo</u>."  <u>In re Marriage of Adamson</u>, 308 Ill. App. 3d 759, 764, 721 N.E.2d 166, 172 (1999).

The relevant portions of Judge Lewis's order, for the purposes of this appeal, set forth that (1) respondent's "petition for declaratory judgment" was, in reality, a section 2-1401 petition--a proper vehicle for respondent's attack on the judgment; (2) petitioner had not waived his right to challenge the trial court's jurisdiction by participating in the proceedings; and (3) the 1995 final judgment was entered without knowledge of either party, and therefore the two-year limitation period under section 2-1401 was tolled.  Although we do not agree with the basis of Judge Lewis's order, we nevertheless affirm.  See <u>Reyes v. Walker</u>, 358 Ill. App. 3d 1122, 1124, 833 N.E.2d 379, 381 (2005) (a reviewing court may affirm on any basis warranted by the record).

Petitioner first claims that respondent's "petition for declaratory judgment" cannot legally be construed as a section 2-1401 petition (735 ILCS 5/2-1401 (West 2002)).  He claims that because respondent (1) did not reference section 2-1401 in her petition, (2) filed her petition more than two years after entry of the final judgment, and (3) did not allege legal disability, duress, or fraudulent concealment so as to toll the two-year time limit, Judge Lewis erred in ruling that her petition was, in substance, a section 2-1401 petition.

Petitioner further claims that respondent's suggestion that the two-year limit was tolled on the basis of a mutual mistake is in error.  While respondent argued in the trial court, relying on <u>In re Marriage of Breyley</u>, 247 Ill. App. 3d 486, 617 N.E.2d 243 (1993), that a mutual mistake of fact was a proper ground for relief under section 2-1401

(an argument not adopted by her brief on appeal), petitioner argues that Judge Lewis "accepted the suggestion" posed by respondent and relied on Breyley as well. Our reading of Judge Lewis's order reveals that not to be the case. Judge Lewis distinguished Breyley, finding the disputed issue in this case arose not from the terms of an agreement but, rather, from whether the parties had entered into an agreement at all.

"A 'mutual mistake of fact' exists for purposes of the reformation of a written instrument, when the contract has been written in terms which violate the understanding of both parties." In re Marriage of Johnson, 237 Ill. App. 3d 381, 394, 604 N.E.2d 378, 388 (1992). Because the parties did not enter into a written agreement or claim the terms of an agreement were not what they had intended, the mutual mistake argument, as a basis for relief, is not applicable.

Although she does not argue the "mutual mistake" theory on appeal, respondent does claim that "[a]s long as the substance of the [section] 2-1401 [m]otion is present, it need not be titled a [section] 2-1401 [m]otion." She further claims that she should be entitled to relief under section 2-1401 of the Code because "fairness and equity" so require. Unfortunately for respondent, "fairness and equity" alone do not constitute sufficient reasons to grant relief under section 2-1401 when the petition was filed more than two years after the judgment was entered.

We agree with petitioner that section 2-1401 of the Code did not provide the proper authority for respondent's requested relief. We find no basis in this case to toll the two-year limitations period required by section 2-1401. Therefore, we must determine whether the trial court had jurisdiction to reopen a final judgment of dissolution six years after its entry on some other basis.

Section 510(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/510(b) (West 2002)) provides that "[t]he provisions as to property disposition may not be revoked or modified, <u>unless</u> <u>the</u> <u>court</u> <u>finds</u> <u>the</u> <u>existence</u> <u>of</u> <u>conditions</u> <u>that</u> <u>justify</u> <u>the</u> <u>reopening</u> <u>of</u> <u>a</u> <u>judgment</u> <u>under</u> <u>the</u> <u>laws</u> <u>of</u> <u>this</u> <u>State</u>." (Emphasis added.) The Fifth District in <u>King v. King</u>, 130 Ill. App. 3d 642, 654, 474 N.E.2d 834, 841-42 (1985), held that this statutory section should be construed under the confines of section 2-1401 of the Code--that a petition filed after two years must allege legal disability, duress, or fraud to be considered timely. The court held that since the wife had not sought relief within two years after the entry of the judgment, and in the absence of legal disability, duress, or fraud, the trial court lacked jurisdiction to consider the wife's petition for relief and the "new" judgment must be vacated. <u>King</u>, 130 Ill. App. 3d at 654, 474 N.E.2d at 842.

In <u>King</u>, the wife had claimed that her husband's personal injury settlement proceeds should have been part of the final judgment of dissolution. The court ruled that because the wife did not request relief until more than two years after the judgment was entered and because she knew of the lawsuit during the dissolution proceedings, the trial court had no jurisdiction to modify the judgment absent allegations of legal disability, duress, or fraud. <u>King</u>, 130 Ill. App. 3d at 654, 474 N.E.2d at 842.

The court in <u>King</u> noted, however, that the provision set forth in section 510(b) of the Act--that courts may reopen a property-division judgment if it finds "the existence of conditions" that would so justify "under the laws of this State" (750 ILCS 5/510(b) (West 2002))--could provide trial courts the ability to revisit judgments under the "additional modes of post-30-day relief," not just under section 2-1401 of the Code.

Those "additional modes" include (1) the application of the revestment doctrine, (2) finding the judgment is void, (3) by agreement of the parties, or (4) the entry of an order nunc pro tunc. King, 130 Ill. App. 3d at 655, 474 N.E.2d at 842.

We find, of the above "additional modes," the doctrine of revestment applies to the case before us. See Adamson, 308 Ill. App. 3d at 767, 721 N.E.2d at 174 (revestment doctrine applies in dissolution cases and outside parameters of Code section 2-1401 time constraints). "[T]he revestment doctrine allows the parties to revest a court with jurisdiction when the parties 'actively participate in proceedings which are inconsistent with the merits of the prior judgment.'" People v. Watkins, 325 Ill. App. 3d 13, 17, 757 N.E.2d 117, 120 (2001), quoting People v. Hubbard, 170 Ill. App. 3d 572, 576, 524 N.E.2d 1263, 1265-66 (1988); People v. Kaeding, 98 Ill. 2d 237, 241, 456 N.E.2d 11, 14 (1983); accord Elmore v. Elmore, 219 Ill. App. 3d 61, 64, 580 N.E.2d 619, 622 (1991).

Once the trial court loses jurisdiction through the passage of 30 days after the entry of its judgment, it may nevertheless be subsequently revested with jurisdiction over the cause under the doctrine of revestment. Kaeding, 98 Ill. 2d at 240, 456 N.E.2d at 14; Adamson, 308 Ill. App. 3d at 766, 721 N.E.2d at 174. "The parties' conduct is inconsistent with a prior order if the conduct reasonably can be construed as an indication that the parties do not view the prior order as final and binding." Adamson, 308 Ill. App. 3d at 766, 721 N.E.2d at 174.

Although petitioner, in these proceedings, does not agree that the original judgment should have been reopened, he does admit that he did not knowingly enter into an agreement in 1995, and he did not realize a final judgment of dissolution had

been entered.  Only subsequent to his realization that he was originally awarded the marital home did he seek to enforce the 1995 judgment.  He openly admits that he and respondent lived as if they were married between 1995 and 2001.  He admits they made purchases and acquired debt since 1995.  Therefore, despite his opposition to reopening the judgment, petitioner's conduct between 1995 and 2001 can be construed as an indication that he, along with respondent, did not view the 1995 judgment as final and binding.  Neither knew the 1995 judgment had been entered.

Other Illinois courts have applied the revestment doctrine in similar situations.  In Adamson, the Second District relied upon the doctrine to affirm the trial court's judgment, which modified the original final judgment of dissolution entered four years earlier when the parties had agreed to the modification.  Adamson, 308 Ill. App. 3d at 767-68, 721 N.E.2d at 174-75.   The court found that the agreement revested the trial court with jurisdiction despite the passage of more than two years.  Adamson, 308 Ill. App. 3d at 767, 721 N.E.2d at 174.

Likewise, the Third District affirmed the trial court's denial of the wife's petition to vacate a stipulated judgment, which modified the original judgment of dissolution.  Elmore, 219 Ill. App. 3d at 65, 580 N.E.2d at 622.  The wife filed her petition to vacate four years after the modified judgment was entered.  Citing section 510(b) of the Act, the wife claimed the modified judgment was void for lack of subject-matter jurisdiction because there were no allegations that the original judgment was procured by fraud or coercion or that any facts existed to entitle them to postjudgment relief under section 2-1401 of the Code.  Elmore, 219 Ill. App. 3d at 64, 580 N.E.2d at 621.  The trial court ruled that jurisdiction had revested by agreement of both parties.

The reviewing court agreed, holding that the judgment of modification was binding. Elmore, 219 Ill. App. 3d at 64-65, 580 N.E.2d at 622.

Judge Carmody entered the July 1995 final judgment of dissolution based upon the representation that the parties had agreed to the property distribution presented. Presumably, during the June 2002 hearing, Judge Carmody learned the parties, in fact, had not agreed to the distribution as presented. Based upon the apparent misunderstanding, Judge Carmody vacated the 1995 final judgment. We find the trial court had jurisdiction to do so based upon the doctrine of revestment in light of the parties' testimony that neither had entered into a property settlement agreement nor realized the final judgment had been entered.

Respondent testified that she did not agree to any division of property in 1995, never testified in court, did not sign any property settlement agreement, and did not realize that a final judgment of dissolution had been entered in 1995. Petitioner likewise testified that he did not realize a final judgment of dissolution had been entered in 1995. He also stated that the only time he testified in court was related to his request for temporary possession of the marital home.

The record before us supports the view that Judge Carmody proceeded under the belief that both parties had discussed and agreed to the terms of a marital settlement agreement, when, in fact, they had not. Although we are puzzled by the lack of evidence pertaining to the respective attorney-client relationships between 1995 and 2001, we find the record before us supports Judge Carmody's April 2003 order vacating the 1995 judgment and redistributing the parties' assets and debt. Because we find Judge Carmody had jurisdiction to set aside the 1995 final judgment, we affirm Judge

Lewis's order denying petitioner's "motion to dismiss."

III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

Affirmed.

STEIGMANN and KNECHT, JJ., concur.