2021 IL App (2d) 190652-U
No. 2-19-0652
Order filed March 2, 2021

NOTICE: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re MARRIAGE OF ARTURO HURTADO, JR., | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Petitioner-Appellant, | ) ) | |
| v. | ) ) | No. 16-D-459 |
| | ) ) | Honorable |
| HEATHER HURTADO, | ) ) | Neal W. Cerne & Robert E. Douglas, |
| Respondent-Appellee. | ) | Judges, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1 *Held*: Part of appeal pertaining to petitioner's untimely successive post-judgment motion dismissed for lack of jurisdiction; in addition, petitioner failed to show that dissolution judgment was void under section 2-1401; finally, petitioner's appellate briefs were borderline incomprehensible, violated multiple Supreme Court Rules, and demonstrated that this appeal was taken in bad faith; judgment affirmed in part, sanctions imposed.

¶ 2 In this post-dissolution appeal, petitioner Arturo Hurtado, Jr., raises a number of challenges

to the dissolution judgment, portions of which favor his former wife, respondent Heather Hurtado.

As we will explain, part of this appeal is dismissed for lack of jurisdiction. Furthermore, on the

issue of Arturo's petition for relief from judgment, we take issue with a number of Arturo's counsel's strident and unprofessional statements, and his failure to file an appellate brief that conforms to Supreme Court Rules. For the reasons that follow, we affirm the portion of the judgment that is properly before us and impose sanctions.

¶ 3                                    I. BACKGROUND

¶ 4      Arturo and Heather Hurtado were married in July 2002, and their marriage resulted in four children. In March 2016, Arturo filed for dissolution citing irreconcilable differences. Custody and visitation issues were mostly resolved by agreement, but financial matters remained unresolved.

¶ 5      Between August and December of 2017, a ten-day trial was held before Honorable Neal W. Cerne. Judge Cerne requested that the parties file written closing arguments; Heather did so, while Arturo did not. On February 27, 2018, Judge Cerne entered a 13-page, single-spaced judgment resolving property distribution, including dissipation owed by Arturo, and an award of maintenance and child support to Heather. Relevant here, the judgment stated that the fair market value of the marital home was $320,000; that there was a balance of $111,648 on the primary mortgage; and that there was another mortgage—a balance of a $72,700 on a home equity line of credit, or HELOC. At the time of the judgment, Arturo was unemployed, so the amounts owed were reserved pending his new employment. Beginning in March 2018, Arturo's sixth attorney entered his appearance and sought and received several extensions to file a post-judgment motion to reconsider. See 735 ILCS 5/2-1203 (West 2016).

¶ 6      On May 8, 2018, Arturo filed his final amended motion to reconsider. The motion generally alleged that the court erred in finding dissipation and further erred by finding there was an additional mortgage on the marital home. The motion noted that an exhibit referenced for the HELOC was actually a receipt for a child support payment, an apparent error.

¶ 7    At a hearing on the motion, the court agreed that Arturo had paid back approximately $10,000 so that he only owed around $30,000 and, so, the judgment would be modified accordingly. On the subject of the "additional" mortgage, Heather's counsel explained that "[t]here is one mortgage, if you add what the amounts are in your ruling, it's the equivalent of the [one] mortgage." The court replied, "Well, that's what I thought but I know I saw -- I know I saw two debts. One was one eleven and the other one was -- I forgot the exact--[.]" At which point Arturo's counsel interrupted the court and began to dispute what the trial evidence was. Counsel eventually agreed that the combined mortgages were essentially listed as a single mortgage on *both* parties' financial affidavits, with a combined balance around $180,000, but counsel further argued that the court's "error" was compounded by Heather's failure to declare as marital "two hundred and some thousand in non-marital property"—which was a reference to an inheritance Heather received from her grandfather.

¶ 8    The court noted that there were numerous deficiencies in Arturo's presentation of evidence, which forced the court to infer and impute income as necessary. The court also noted that the inconsistent scheduling of trial dates over the course of several months led to a "hodgepodge presentation" that often "made no sense." The court further noted that Arturo failed to file a closing argument, which might have shed some light on gaps in the evidence. After the agreed modification of the $10,000 in dissipation, the court denied the remainder of Arturo's motion to reconsider.

¶ 9    On February 10, 2019, nearly a year after the entry of the judgment, Arturo (through new counsel, Gary N. Foley, who is also Arturo's appellate counsel) filed a combined motion to reconsider (735 ILCS 5/2-1203) and a petition to vacate the judgment (735 ILCS 5/2-1401 (West 2016)). The combined petition dispensed with the distinction between marital and non-marital

property and asserted that the trial court erroneously awarded 95.7% of maintenance and assets to Heather, leaving Arturo with only 4.3% of the estate. The motion asserted that the "Judgement [*sic*] [was] erroneous and unconscionable on it's [*sic*] face, but was also arbitrary and capricious throughout." The motion suggested that the only explanation for the court's "errors" was "the mixing of facts from another case and or [*sic*] based on a lump sum maintenance award that was clearly not appropriate where the court also awarded future [m]aintenance to be paid by Arturo despite Arturo being unemployed without cause seems to also be arbitrary and capricious under the unusual circumstances in this convoluted case." (Emphasis removed.) Throughout the motion, it was alleged that Arturo had been a victim of fraud and a "mutual mistake of fact" perpetrated by both the court and by Heather's counsel. More specifically, the motion alleged that the HELOC artificially deflated the value of the marital home, and that a section of the judgment, which referred to Heather having worked as a part-time makeup artist was inconsistent with evidence that she held a degree in communications and had also worked in marketing. In one truly bizarre paragraph, counsel wrote as follows:

"There is an old expression that 'pigs get fat, and hogs get slaughtered' and in looking at the Judgment and the clearly erroneous facts and conclusions, as well as some of the apparent arbitrary and capricious findings coupled with some of the recent pleadings filed by the Respondent it would appear that that old adage appears to ring true here."

It is unclear who precisely is the target of counsel's scattershot invective, but as we address below, it is clear that counsel's comments were both unbecoming and unprofessional.

¶ 10    By the time the motion was filed, on February 13, 2019, again nearly a year after the judgment, the motion was docketed before the Honorable Robert Douglas. Upon receipt of the motion, Judge Douglas bifurcated the pleading and referred the motion-to-reconsider portion (735

ILCS 5/2-1203) to Judge Cerne, who was now sitting in a different courtroom.

¶ 11    The opening to the hearing before Judge Cerne on May 8, 2019, generated one of the more memorable transcripts in this court's collective memory. At the outset of the hearing, Arturo's counsel offered Judge Cerne the *opportunity* to voluntarily recuse himself. Counsel explained that he would have filed a motion, but he felt the allegations in the combined motion to reconsider or vacate were "enough for your Honor to consider whether or not you were going to voluntarily recuse yourself before I file a motion to recuse which would cost my client time and money." Judge Cerne stated that in the absence of a motion—particularly as he was the trial judge and had already heard one motion to reconsider—he would *not* be voluntarily recusing and saw no reason he could not continue with the case. Instead, Judge Cerne determined that he had no jurisdiction to consider Arturo's untimely, successive post-trial motion, and returned the case to Judge Douglas.

¶ 12    On June 25, 2019, the matter came before Judge Douglas for status on the motion to vacate (735 ILCS 5/2-1401) and several additional unrelated post-judgment matters. Following arguments by counsel, Judge Douglas stated the following:

> "Mr. Hurtado in [one] response requested specific relief from this court in asking for a *sua sponte* ruling on the underlying [§ 2-1401] petition today, and I'm going to give you that relief which you requested, Mr. Foley [(Arturo's counsel)]. The court has -- as I said, has reviewed the underlying judgment -- excuse me, has reviewed the [§ 2-1401], in addition to the pleadings that are up today, and, once again, [§ 2-1401] is to correct fraud committed by one party or the other or if there was a mutual mistake by both parties.
>
> In reading your [§ 2-1401], every single mistake that you allege was made by Judge Cerne, not by the parties. The mistakes of a judge are -- in a trial judgment, are the purview

of that judge in a motion to reconsider and, if a motion to reconsider is denied, the purview of the Appellate Court to decide whether he abused his discretion or incorrectly applied facts presented at the trial."

Judge Douglas stated that he could not simply presume Judge Cerne had erred, or reopen the judgment, on nothing more than Arturo's say-so that there was a 62%-38% split of assets or that the split was inequitable. Judge Douglas concluded that Arturo's assertions were procedurally improper under § 2-1401 and denied the motion with prejudice. The court also included immediate appealability language under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016).

¶ 13    On July 23, 2019, Arturo filed a notice of appeal listing both the May 8, 2019, judgment from Judge Cerne, which denied his motion to reconsider (§ 2-1203), and the June 25, 2019, judgment from Judge Douglas, which denied the motion to vacate (§ 2-1401).

¶ 14                              II. ANALYSIS

¶ 15                              A. Jurisdiction

¶ 16    We first address our jurisdiction, which we have a duty to consider and to dismiss an appeal, or a portion of an appeal, when jurisdiction is lacking. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 251 (2010). We turn first to Arturo's attempt to challenge Judge Cerne's May 8, 2019, denial—that would be Judge Cerne's *second* denial—of Arturo's post-trial motion (§ 2-1203). After the dissolution judgment was filed on February 27, 2018, the trial court granted Arturo four extensions to file his post-trial motion and yet another extension to amend his pleading. The amended motion was promptly heard and (with the exception of an agreed $10,000 modification to the dissipation judgment) denied on June 5, 2018. The trial court may grant extensions to file a post-judgment motion (*In re Estate of Andre T.*, 2018 IL App (1st) 172613, ¶ 36); however, 30 days after the motion is ruled upon, the trial court loses jurisdiction over the case

and no further post-judgment motions may be entertained (*id.* ¶¶ 36-37).

¶ 17    There is no authority for a party to file a successive post-trial motion, over one year after the entry of the judgment, and nearly a year after the initial post-trial motion has already been ruled upon. *Cf.* 735 ILCS 5/2-1203. Although there was no written order entered denying Arturo's belated, successive motion to reconsider, we dismiss the portion of this appeal challenging Judge Cerne's May 8, 2019, denial of the motion as we have no jurisdiction to hear it.

¶ 18    That said, we do have jurisdiction to hear Arturo's appeal from Judge Douglas's denial of Arturo's § 2-1401 petition. Arturo's notice of appeal was filed within 30 days of that judgment and, despite the inclusion of Rule 304(a) language in the order, that appeal is plainly cognizable under Supreme Court Rule 304(b)(3) (eff. Mar. 8, 2016), which provides for interlocutory appeals from judgments granting or denying relief under § 2-1401.

¶ 19    Prior to the filing of merits briefs in this case, Heather filed a motion requesting sanctions on the basis that we lack jurisdiction over the entire appeal. We took that motion with the case. As we have explained, we do have jurisdiction to review the denial of Arturo's § 2-1401 petition. Accordingly, the motion is denied. We will address an additional request for sanctions.

¶ 20                              B. 735 ILCS 5/2-1401

¶ 21    While we have jurisdiction to review Judge Douglas's ruling on Arturo's § 2-1401 petition, we nevertheless affirm the court's judgment. A § 2-1401 petition can present either a factual or legal challenge to a final judgment or order, and the nature of the challenge presented dictates the proper standard of review. *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 31. When a § 2-1401 petition presents a fact-based challenge, it must allege facts to support (1) the existence of a meritorious defense, (2) due diligence in presenting this defense to the trial court, and (3) due diligence in filing the petition. *Id.* ¶ 37 (citing *Smith v. Airoom, Inc.*,

114 Ill. 2d 209, 220-21 (1986)). "The question of whether relief should be granted lies within the sound discretion of the circuit court" and "a reviewing court will reverse the circuit court's ruling on the petition only if it constitutes an abuse of discretion." *Id.* (citing *Airoom*, 114 Ill. 2d at 221). On the other hand, when a § 2-1401 petition presents a purely legal challenge to a judgment, such as a claim that the earlier judgment was void, the standard of review is *de novo. Id.* ¶ 47.

¶ 22    Here, Arturo's petition is clearly directed at disputing the facts underlying the judgment, which would implicate an abuse-of-discretion standard. However, under any standard of review, we agree with the trial court that Arturo's § 2-1401 motion failed to allege circumstances that would warrant the reopening of a judgment.

¶ 23    "Consistent with the strong judicial policy favoring finality of judgments, * * * a section 2-1401 petition is not to be used as a device to relitigate issues already decided or to put in issue matters which have previously been or could have been adjudicated." (Internal quotation marks omitted.) *Stolfo v. KinderCare Learning Centers, Inc.*, 2016 IL App (1st) 142396, ¶ 29 (quoting *Hirsch v. Optima, Inc.*, 397 Ill. App. 3d 102, 110 (2009)). Grounds for relief under § 2-1401 have traditionally included fraud and mutual mistake of fact, among others. *In re Marriage of Hamm-Smith*, 261 Ill. App. 3d 209, 214 (1994). As the trial court perceptively noted, none of the grounds alleged in Arturo's motion are applicable. For example:

"A 'mutual mistake of fact' exists for purposes of the reformation of a written instrument, when the contract has been written in terms which violate the understanding of both parties. [Citation.] Because the parties did not enter into a written agreement or claim the terms of an agreement were not what they had intended, the mutual mistake argument, as a basis for relief, is not applicable." (Internal quotation marks omitted.) *In re Marriage of Miller*, 363 Ill. App. 3d 906, 913 (2006).

As the judgment here was not a marital settlement agreement, nor was it based on a stipulation between the parties, a claim of mutual mistake of fact is simply inapplicable. *Cf. In re Marriage of Breyley*, 247 Ill. App. 3d 486, 491 (1993) (petitioner alleged sufficient facts to show mutual mistake where written marital settlement agreement did not reflect the parties' actual agreement regarding child support and child custody).

¶ 24    Similarly, Arturo has failed to show fraud, or to allege any fact for that matter, that would have prevented the entry of the judgment. At the hearing on Arturo's initial motion to reconsider before Judge Cerne, Arturo's counsel *agreed in open court* that both parties had listed the home's two mortgages as a single mortgage on their respective financial statements. No evidence was presented at trial or in Arturo's § 2-1401 motion that contradicted the parties' assertion about the financial statements. In other words, there is nothing that *disproves* the parties' statements at the post-judgment hearing or disproves a fact that was consequential to the judgment itself. In light of the foregoing, we determine that Arturo is judicially estopped from attempting to change his position from his attorney's statement at the first post-judgment hearing regarding the balance and configuration of the note(s). See *Seymour v. Collins*, 2015 IL 118432, ¶¶ 38-39 (discussing judicial estoppel); see also *Smolinski v. Vojta*, 363 Ill. App. 3d 752, 756 (2006) (holding that husband could not collaterally attack judgment under § 2-1401 on issue that was fully raised before the trial court and could have been raised on direct appeal regardless of whether he sought one).

¶ 25    Additionally, as to the question of whether Heather ever worked as a part-time make-up artist, we note that there are obvious gaps in the trial record, which Arturo neither addresses nor explains. On one date, for example, the entire morning portion of Arturo's testimony is missing. There are also references to Arturo's pension and stock plans that appear to have been discussed in greater detail at some point previously, but that discussion is not included in the record. To put

it simply, we cannot say with any certainty that the record submitted to this court refutes the "make-up artist" portion of the judgment, let alone that the judgment was procured by fraud. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 393 (1984) (appellant bears burden of presenting sufficient record on appeal and where record is incomplete it will be presumed that the judgment was in conformity with the law and was properly supported by evidence). Furthermore, we are compelled to note that Arturo's briefs are bereft of any cogent argument that these issues, which were raised nearly a year after the entry of the judgment, were brought to the trial court's attention with any discernable diligence.

¶ 26 As we explain in greater detail below, the remainder of Arturo's arguments are forfeited for lack of development, and the trial court's denial of Arturo's § 2-1401 motion is affirmed.

¶ 27                                   C. Sanctions

¶ 28 As noted earlier, Heather filed two requests for sanctions in this appeal. Heather's first request was filed prior to briefing. We took that motion with the case and denied it above. *Supra* ¶ 19. Heather's second request for sanctions was made in her appellee's brief and is based on Arturo's opening brief. Specifically, Heather asserts that this appeal was not taken in good faith, that it was dilatory, and that it was frivolous. Arturo's counsel devoted five pages of his reply brief to his attempt to explain why he should not be sanctioned.

¶ 29 Rule 375(b) authorizes reviewing courts to impose appropriate sanctions on any party or the attorney or attorneys of the party when an appeal itself is frivolous or when it has been brought for an improper purpose, *i.e.*, to harass the opposing party or to needlessly drive up the cost of litigation. *Thompson v. Buncik*, 2011 IL App (2d) 100589, ¶ 21. "An appeal is frivolous where 'it is not reasonably well grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law.' " *Raymond W. Pontarelli Trust v.*

*Pontarelli*, 2015 IL App (1st) 133138, ¶ 33 (quoting Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994) ). The determination that an appeal is frivolous or taken for an improper purpose is an objective test: "an appeal will be found to be frivolous if a reasonable prudent attorney would not in good faith have brought such an appeal, or the appeal conduct will be found to be improper if a reasonable prudent attorney would not have engaged in such conduct." Ill. S. Ct. R. 375, Committee Comments (adopted Aug. 1, 1989).

¶ 30    Arturo's appellate briefs before this court leave us with the firm conviction that the purpose of this appeal was to harass Heather and delay the inevitable resolution of this case. Arturo's opening 57-page brief (we granted him leave to file in excess of 50 pages) does not arrive at its argument section until page 42. The pages that precede it are replete with inaccuracies, citations to incorrect parts of the record, and laden with argument, all in violation of Supreme Court Rule 341(h)(6) (eff. May 25, 2018).

¶ 31    The argument section of Arturo's brief is more troubling. A reviewing court is entitled to have the issues before it clearly defined with relevant authority cited and cohesive arguments presented. *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 10. In line with those principles, Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018) requires an appellant's brief to include "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." An appellant violates Rule 341(h)(7) when he or she fails to elaborate on an argument, fails to cite persuasive authority, or fails to present well-reasoned argument. See *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises*, 2013 IL 115106, ¶ 56. Thus, allegations that are vague or that are merely listed in the appellant's brief without explanation or analysis do not satisfy Rule 341(h)(7); nor do citations that merely point to irrelevant authority. *Id*.; *Vancura v. Katris*, 238 Ill. 2d 352, 369

(2010).

¶ 32   The argument heading for Arturo's principal contention on appeal is as follows:

"Whether The Existence Of Multiple Material False Facts And Conclusions From A Previous Judge Cerne Divorce Judgment Contained In This Divorce Judgment, Coupled With The Multiple Clearly Erroneous, Biased, Inaccurate, & Unconscionable Findings Of Fact And Conclusions Of Law Present In The Feb. 27, 2018 Judgment, Have Resulted In Such A Clearly Unconscionable Distribution Of Non-Marital And Marital Assets And Prospective 164[-]Month Maintenance Award To Justify Granting Arturo's Feb. 11, 2019 [§ 2-]1401 Motion Based On The Appellate Court's Inherent Jurisdiction To Set Aside Or Vacate A Clearly Unconscionable Judgment That Resulted From Clear Errors And Abuse Of Discretion By Judge Cerne Who Refused To Hear Three Separate 1203 Motions And A [§ 2-]1401 Motion Requesting Him To Vacate And/Or Modify His Clearly Defective Judgment And Post Decree Rulings Where The [§ 2-]1401 & [§2-] 1203 Motions Were Filed Greater Than 30 Days After His June 5, 2018 Order But Were Not Ever Actually 'Heard' By Judge Cerne[.]"

While that 155-word "sentence" is unwieldy, what is far worse is the paragraph that follows. We have omitted record citations, but otherwise, what follows is a copy of pages 43 through 44 of that brief:

"In this case, at a minimum, Judge Cerne acted arbitrarily, unfairly, capriciously, and unreasonably, and ignored recognized principles of law by including facts and conclusions from a different divorce case in the Judgment in this case. Furthermore, the Judgement [*sic*] and post [-] Judgment rulings were clearly not based on the evidence from the trial, as some of the false facts contained in the Judgment were

absolutely from a prior divorce case Judge Cerne arbitrarily and unreasonably chose to use as a template in this Divorce case. Unfortunately, Judge Cerne also then absolutely refused to acknowledge, or attempt to rectify, his clear errors in any cognizable way despite being given three separate opportunities to do so, *had he merely bothered to show some judicial integrity* and *actually bother*[ed] *to read* and allow argument on the allegations in the three separate [§ 2-]1203 Motions he instead chose to summarily deny without explanation on three separate occasions. Additionally, there were a plethora of clearly arbitrary, erroneous, capricious, unfair, and unreasonable findings and conclusions contained in the clearly defective Judgment besides the multiple false facts and conclusions from a different divorce Judgment making the Judgment clearly and absolutely Unconscionable on it's [*sic*] face ***." (Emphasis added.)

These repetitive conclusory statements, impugning the integrity of the trial court, fail to engage honestly with the bases for the trial court's rulings. They reflect poorly on counsel and they are not well taken.

¶ 33    In addition, during the briefing in this appeal, another matter arose that calls for comment. In the appellee's brief, Heather's counsel noted that Arturo had failed to file a transcript of the June 25, 2019, hearing before Judge Douglas—*i.e.*, the hearing on Arturo's § 2-1401 petition, which is the primary judgment Arturo sought to challenge in this appeal. In the absence of the transcript, Heather asked that we affirm Judge Douglas's order, citing *Foutch*, 99 Ill. 2d at 391-92. Two weeks after Heather's brief was filed, Arturo filed a motion to supplement the record with 11 missing transcripts, and although he did not specifically seek leave to file the June 25, 2019, transcript, it was nevertheless included in one of the supplements counsel filed.

¶ 34    Arturo's counsel then filed a reply brief with the following opening line: " 'Power tends to corrupt, and absolute power corrupts absolutely.' *John Emerich Edward Dalberg-Acton, 1st Baron Acton, 13th Marquess of Groppoli, Letter to Bishop Mandell Creighton, April 5, 1887. Transcript of, published in Historical Essays and Studies, edited by J. N. Figgis and R. V. Laurence (London: Macmillan, 1907).*" Things did not improve from there. The reply brief continued to attack the integrity of Judges Cerne and Douglas.

¶ 35    We note that in light of Arturo's claims, we have carefully reviewed this record, which is over 5000 pages, and found that the trial court judges uniformly acted with the patience and diligence that we expect of them. The same cannot be said for Arturo's current counsel who was quarrelsome, unprofessional, and downright uncivil. Counsel has failed to accurately recite the bases for the trial court's decisions, and so has failed to meaningfully address the decisions counsel would have us overturn on appeal.

¶ 36    "This court does not mean to discourage attorneys from zealously representing their clients or from bringing appeals that have even arguable merit." *First Federal Savings Bank of Proviso Township v. Drovers National Bank of Chicago*, 237 Ill. App. 3d 340, 347 (1992). That said, there is *no* arguable merit to this appeal. Moreover, the misrepresentation of facts in the record coupled with counsel's strident assertions make the manner of this appeal's prosecution highly improper. We agree with Heather that Rule 375(b) sanctions are warranted. We direct Heather to file a statement of reasonable expenses and attorney fees associated with this appeal within 14 days. Arturo's appellate counsel shall have seven days to file a response. We will thereafter file an order determining the amount of sanctions that will be imposed upon Arturo's appellate counsel. See *Gilkey v. Scholl*, 229 Ill. App. 3d 989, 994 (1992).

¶ 37                               III. CONCLUSION

¶ 38    For the reasons stated, we dismiss a portion of this appeal, and we affirm the judgment of the circuit court of Du Page County and impose sanctions.

¶ 39    Affirmed in part and dismissed in part; sanctions imposed.